State v. Laverack et ux.

---

THE STATE v. DAVID LAVERACK AND MARY LAVERACK.

1. The legislature has not the power, under the constitution of this state, to authorize a market to be held in a public street of a city, without providing compensation to the proprietors of the contiguous lands who own to the centre of such street.

2. The general principle is, that when land is acquired by the public for one particular use, no additional burthen can be superadded without compensation to the land-owner.

---

Upon conviction for assault and battery.

The defendants were tried at the December Term, 1869, of Passaic Oyer and Terminer, of an assault and battery on Frederick Meller.

There being no disputed facts in the case, the court directed the jury to find a formal verdict of guilty, and suspended

sentence to obtain the advisory opinion of this court upon the legal questions raised and submitted on the trial. The prosecutor, at the time of the assault and battery, was selling country produce out of a one-horse farm wagon placed close to the curb in the street, on the east side of Main street, and southerly of Godwin, in the city of Paterson, and directly in front of the defendants' property—which was occupied by them—the lower part for a jewelry store, the upper for a residence; and the attempt by the defendants to remove the prosecutor by force from the street there, while he was selling his country produce, as before stated, is the assault and battery charged—the defendants using no more force than was necessary to remove him.

From the record of ordinances produced on the trial, it appeared that the mayor and aldermen, on the 15th of July, 1867, among other things, ordained:

"That the east side of Main street, beginning at and lying southerly of Godwin street, shall be used as a public market for the sale of country produce," and which, at the time of said occurrence, was unrepealed.

It also appeared from the deed produced by the defendants, David Laverack then was the owner in fee simple of the premises in front of which said wagon was placed, as before stated.

The court ordered a verdict of guilty against both defendants, and hereby refer the case to the Supreme Court for its advisory opinion whether judgment should be pronounced upon the same, or the verdict be set aside.

The case was argued at bar by—

*H. A. Williams*, for the state.

*A. B. Woodruff*, for defendants.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. By the charter of the city of Paterson, passed in the year 1861, power is conferred upon

the municipal government "to prescribe and locate certain streets of the city to be used as public markets for the sale of country produce, and to regulate and prescribe the places for selling meat or fish in the streets of said city." *Pamph. Laws of* 1861, *p.* 336. In pursuance of this authority, market limits were, by ordinance, duly established, embracing the street in front of the defendants' property, which property was occupied as a shop. The prosecutor, at the time of the alleged assault upon him, was selling country produce in the street directly in front of the premises of the defendants, out of his farm wagon, which had been there for several hours. The defendants removed this wagon, using no more force than was necessary. The case has been certified to this court for its advisory opinion touching the question whether the provision of the city charter, which is above recited, and which gives to the city authorities the power to convert such portion of the streets as they may deem expedient into public markets, is consistent with the law and constitution of this state.

When this matter was first opened on the argument, I was at a loss to perceive upon what ground the grant of this franchise to the city was to be sustained, and reflection has but served to deepen that impression into conviction. It is one of the most important of the privileges of the citizens of this state that their property cannot be taken, even when required by the public convenience, without just compensation. This is a constitutional provision, and, like all such, is to be sedulously guarded and carefully preserved. It is the admitted duty of the courts of the state to see that this invaluable prerogative is secure against all invasion. The provision is a restriction on the legislative power, and a statute in contravention of it is void. These principles have been heretofore so often stated and enforced that it is necessary to advert to them only to mark their application to the facts now before the court.

The defendant was the owner of a lot of land bounded on the street in question. His title extended *ad medium filum*

*vice.* It does not appear, nor does it seem important, how the street had been laid out or acquired. It is not pretended that when the charter was enacted the public had any rights in this strip of ground, except such as are incident to highways. The fee in the soil was in one of the defendants; the right of passage was in the public.

Under these circumstances I think it is undeniable that the appropriation of this land to the purposes of a market was an additional burthen upon it. Clearly, it was not using it as a street. So far from that what the act authorized to be done, was incongruous with such use—for the market was an obstruction to it, considered merely as a highway. There can be no doubt that an indictment will lie for holding a fair or market in a highway unless legalized by custom. *Rex* v. *Smith,* 4 *Esp. R.* 109; *Rex* v. *Canfield,* 6 *Esp. R.* 136; *Elwood* v. *Bullock,* 13 *Law J.* (*N. S.*) 330. And in like manner, a sale in a public street by a constable under an execution is a nuisance. *Commonwealth* v. *Milliman,* 13 *S. & R.* (*Penn.*) *R.* 403. In a recent case in New York, the collecting of carts in a street in the ordinary course of a legitimate business was declared to be a misdemeanor, on the ground that it unduly impeded the use of the public easement. *People* v. *Cunningham,* 1 *Denio* 524.

When, therefore, the legislature declared that these streets in the city of Paterson might be used for market purposes, the power which was conferred, in substance, was an authority to place obstructions in these public highways. The consequence is, that there is no force in the argument, which was the principal one pressed upon our attention, that the use of these streets for the purpose now claimed is as legitimate as the use of a public highway by a horse railroad, which latter use has been repeatedly sanctioned by the courts of the state. The two cases, so far as relates to principle, stand precisely opposite. I have said that a market is an obstruction to a street; that it is not a use of it as a street, but, if unauthorized, is a nuisance. To the contrary of this, a horse railroad is a new mode of using a street as such, and it is precisely

upon this ground that it has been held to be legal. The cases rest upon this foundation. That a horse railway was a legitimate use of a highway, was decided in *Hinchman et al.* v. *Paterson Horse Railroad Company*, 2 *C. E. Green* 76 ; and in his opinion, Chancellor Green assigns the following as the reasons of his judgment: "The use of the road is nearly identical with that of the ordinary highway. The motive power is the same. The noise and jarring of the street by the cars is not greater, and ordinarily less than that produced by omnibusses and other vehicles in ordinary use. Admit that the nature of the use, as respects the traveling public, is somewhat variant, how does it prejudice the landowner ? Is his property taken ? Are his rights as a landowner affected ? Does it interfere with the use of his property any more than an ordinary highway ?" It is clear that this reasoning can have no appropriate application to a case in which it appears that the use of the street in question is so far from being " nearly identical with that of the ordinary highway " that in law it has always been regarded as an injury to such public easement, and on that account an indictable offence.

I regard, then, a right to hold a market in a street as an easement additional to, and, in a measure, inconsistent with its ordinary use as a highway. The question, therefore, is presented—can such easement be conferred by the legislature on the public without compensation to the land-owner ? I have already said that from the first it has appeared to me this question must be answered in the negative. I think the true rule is, that land taken by the public for a particular use cannot be applied, under such a sequestration, to any other use, to the detriment of the land-owner. This is the only rule which will adequately protect the constitutional right of the citizen. To permit land taken for one purpose, and for which the land-owner has been compensated, to be applied to another and additional purpose, for which he has received no compensation, would be a mere evasion of the spirit of the fundamental law of the state. Land taken and applied for

the ordinary purposes of a street would often be an improvement of the adjacent property; an appropriation of it to the uses of a market would, perhaps, as often be destructive of one-half of the value of such property. Compensation for land, therefore, to be used as a highway, might, and many times would be totally inadequate compensation, if such land is to be used as a public market place. Few things would be more unjust than when compensation has been made for land in view of one of these purposes, to allow it to be used, without compensation, for the other. The right of the public in a highway consists in the privilege of passage and such privileges as are nnexed as incidents by usage or custom, as the right to make sewers and drains, and lay gas and water pipes. These subordinate privileges are entirely consistent with the primary use of the highway, and are no detriment to the land-owner. But I am not aware of any case in which it has been held that the public has any right in a highway, which is incongruous with the purpose for which it was originally created, and which at the same time is injurious to the proprietor of the soil. Such certainly has not been the course of judicial decision in our own courts. Indeed the cases appear to be all ranged on the opposite side. I have shown that the legalization of the use of a street by a horse railroad has been carefully placed on the ground that such an appropriation of the street was merely a new mode of its legitimate and ordinary use. The *rationale* adopted excludes, by necessary implication, the hypothesis that the dedication of a street to a new purpose, inconsistent with its original nature, would be legal with respect to the uncompensated land-owner. But, beyond this, it has been expressly declared that such superadded use would be illegal. In the opinion of Mr. Justice Haines in *Starr* v. *Camden and Atlantic Railroad Company*, 4 *Zab.* 592, it is very explicitly held that the constitution of this state would prevent the legislature from granting to a railroad company a right to use a public highway as a bed for their road, without first making compensation to the owner of the soil. And in the

case of *Hinchman et al.* v. *The Paterson Horse Railroad Company*, already cited, Chancellor Green quotes these views and gives the doctrine the high sanction of his own approval. See, also, *The Central Railroad Company* v. *Hetfield*, 5 *Dutcher* 206. If these expressions of opinion are to be received as a correct exposition of the legal rule upon the subject, the position of the prosecution in the present case has no foundation, for it is presumed no person would contend that if a highway cannot be applied to the uses of a railroad, it can be for those of a market.

The case of *Carter* v. *Wright*, 3 *Dutcher* 76, was cited on the argument and should not be passed, in this connection, without explanation. A turnpike company was authorized to have a public road vacated, and to subject the land so relieved of its old burthen to the new servitude. A vacation was effected, and the company, in connection with their gates, erected a toll-house on the bed of the road. This court held that the act of the legislature authorizing this action of the turnpike company was constitutional—and further, that the erection of the toll-house on the bed of the road was likewise legal. This judicial validation of the change of the public highway into a turnpike cannot operate in favor of the prosecution in the present case, inasmuch as it is expressly placed on the principle that such a change imposed no new burthen on the land-owner, and that nothing was thereby taken from him. The view entertained was, that all that the legislature granted to the turnpike company was the use of the ancient highway for the purposes of their road—and that, consequently, the property of the land-owner was not infringed. Thus far the decision is in all respects in harmony with the rule adopted in the other cases above cited; but this decision went beyond this point, and established the right of the company to put up their toll-house on the bed of their road. It seems to me that this was an invasion of the property of the land-owner, because to this extent it put an additional servitude upon his property. While the land was a public highway such a building could not have been erected; conse-

quently, when such land was converted into a turnpike, to authorize such an erection was to give to the public a new use in such land. Although the circumstance does not appear in our reports, this case of *Carter* v. *Wright* was carried into the Court of Errors, and was reversed in the term of November, 1858, (*see minutes of that term.*) No written opinion appears to have been prepared, but I have always understood that the view of the Supreme Court, touching the' legislative right to convert the public highway into a turnpike was concurred in by the higher court, and that the point of dissent was with regard to the privilege which had been sanctioned of putting the toll-house on the property of the land-owner. It will be observed, therefore, that this case, in its ultimate aspect, presents a pointed assertion of the doctrine that when land is burthened · by one servitude, a second cannot be imposed by the legislature, without compensation to the proprietor.

An examination of the decisions in the other states will show that, in the main, judicial opinion favors the same result. *The State* v. *The Mayor and Aldermen of Mobile,* 5 *Porter* 279; *The Trustees of the Presbyterian Society* v. *The Auburn & Rochester R. R. Co.,* 3 *Hill* 569; *Williams* v. *The New York Central R. R. Co.,* 16 *N. Y. R.* 111; *and cases collected in Angell on Highways,* § 243, *et seq.*

I think the wagon of the prosecutor, at the time in question was a nuisance, and that the defendants had the right to remove it peaceably—and that the court below should be so advised.

CITED *in Morris and Essex R. R. Co.* v. *Hudson Tunnel Co.,* 10 *C. E. Gr.* 389.