JOHN HUBAND, PROSECUTOR, v. ALTON V. EVANS, RECORDER OF THE CITY OF LONG BRANCH, AND THE CITY OF LONG BRANCH, RESPONDENTS.

Submitted October 12, 1934—Decided March 27, 1935.

Before Justices HEHER and PERSKIE.

For the prosecutor, *John G. Flanigan.*

For the defendants, *Jacob Steinbach, Jr.*

The opinion of the court was delivered by

HEHER, J. Prosecutor challenges a judgment of conviction upon a complaint charging that, on July 3d, 1933, in the city of Long Branch, he "did engage in the business, trade or calling of peddling and selling bread, cakes and pies with an automobile without first obtaining a license therefor, * * * contrary to and in violation of the fifth section of an ordinance of the city of Long Branch entitled 'An ordinance governing, regulating and fixing fees of mercantile licenses in the city of Long Branch, New Jersey, and regulating business licensed,' approved January 11th 1927."

The evidence adduced in substantiation of this allegation tended to establish the following matters of fact. Huband was an employe of the General Baking Company, a corporation engaged in the business of manufacturing and selling bread and cake to the operators of retail grocery stores and kindred merchandising establishments. Its bread manufacturing plant is located in Jersey City. It has a cake baking plant in Philadelphia. It maintains in the township of Neptune, near the city of Asbury Park, a distributing depot for the service of its customers in the various municipalities along the north Jersey shore, including the city of Long Branch. This municipality is in the territory assigned to Huband. The corporation's customers in that municipality numbered sixty-four—in every instance the operator of a retail grocery store or like place of business. This was Huband's daily practice: He would call at the place of business of each customer and supply his need, giving credit for the unsold product delivered the previous day, and collecting the balance due. On the occasions when more than the usual daily supply was required, the store operator would indicate the additional need, and it would be immediately supplied from the delivery vehicle in Huband's charge. He carried also a supply of cakes, and would likewise provide, on request, the storekeepers' daily requirement of this product. It is admitted that it was Huband's practice to solicit the trade of the newly-opened store; but it is likewise conceded that there was no house-to-house canvassing, or house-to-house deliveries.

There were no sales to the consumers. The company maintained no place of business in Long Branch.

The proofs did not establish the allegations of the complaint. Huband was not, in the transaction in question, a "peddler" within the intendment of the ordinance. Section 1 provides that it shall not be lawful, within the municipality, without a license for the purpose, "to engage in or carry on any business, trade or calling in using any wagon, vehicle, stand, store or other place, or sell or offer for sale any goods, wares or merchandise, for which a license is required by the terms of this ordinance." Section 3 designates the "businesses, trades, or occupations required to be licensed," and prescribes the license fees. The business or occupation claimed to have been pursued in the instant case, in violation of the terms of the ordinance, is specified in this section as "peddlers with wagons, pushcart, basket or automobile selling pies, cakes and bread."

The term "peddler" is derived from an old Scotch word. "ped," meaning a bag; and a peddler was originally one who went about from house to house carrying in a bag goods which he exposed for sale, sold, and delivered to whomsoever he might prevail on to buy. A comprehensive and approved modern definition of a peddler is one who goes from place to place and from house to house carrying for sale and exposing to sale goods, wares and merchandise which he carries; or, better, he is an itinerant, solicitant vendor of goods who sells and delivers to consumers the identical goods which he carries with him. 21 *R. C. L.* 181, citing *Davenport* v. *Rice,* 75 *Iowa* 74; 39 *N. W. Rep.* 191; *St. Paul* v. *Briggs,* 85 *Minn.* 290; 88 *N. W. Rep.* 984; *State* v. *Bayer,* 34 *Utah* 257; 97 *Pac. Rep.* 129; 19 *L. R. A.* (*N. S.*) 297. The delivery of goods which have been ordered does not constitute peddling; and the soliciting and taking of orders for future delivery, on samples submitted, does not fall into that category. *Hewson* v. *Englewood,* 55 *N. J. L.* 522; *Village of Stamford* v. *Fisher,* 140 *N. Y.* 187; 35 *N. E. Rep.* 500. To constitute peddling the transaction must be with the consumer; dealings with retailers are not so classified. *Castles*

*Ice Cream Co.* v. *Highlands,* 7 *N. J. Mis. R.* 415; *St. Paul* v. *Briggs, supra.* "This is historically justifiable, for when the term originated there probably were no itinerant salesmen selling to retailers alone goods which they carried with them. Furthermore, it is a logical qualification of the definition. In all the cases the necessity of finding a meaning for the word 'peddler' arose from the necessity of interpreting a statute or ordinance containing it. The legislative body using the word was dealing with a mischief. The natural and probable interpretation of the words used would be such as to make them cover just the mischief aimed at, and none other. It is obvious that retail dealers, trained merchants, were imposed on in no such way as were householders, or ordinary consumers. Hence, those modern itinerants selling to retailers alone needed no such regulation as peddlers did, and were not held to be peddlers." 21 *R. C. L.* 184.

Here the merchandise was concededly sold and delivered by Huband's employer under a contract calling for a daily supply, upon definitely understood terms, to meet the demands of the retailers' trade; delivery so made did not constitute peddling in any sense of the term.

This case is within the *ratio decidendi* of *Lynch* v. *Long Branch,* 111 *N. J. L.* 148. There the self-same ordinance was under consideration; and it was held by this court that it imposes a tax for revenue, and that the *situs* of the business is the proper place for levying such tax. The legislature did not intend, by article 15 of the Home Rule act of 1917 (*Pamph. L.* 1917, *p.* 358), as amended by chapter 215 of the laws of 1929 (*Pamph. L.* 1929, *p.* 406), to permit the imposition of a tax for revenue by every municipality into which such a business extends.

The conviction is accordingly set aside, with costs.