RICHARD BROWN AND ERNEST KING, PLAINTIFFS–RESPON-
DENTS AND CROSS–APPELLANTS, v. CITY OF NEWARK, A
MUNICIPAL CORPORATION OF THE STATE OF NEW JER-
SEY, DEFENDANT–APPELLANT AND CROSS–RESPONDENT.

Argued March 14, 1988—Decided January 18, 1989.

568

*Kathleen C. Goger* argued the cause for appellant and cross-respondent (*Glenn A. Grant,* Corporation Counsel, attorney).

*Louis Raveson* argued the cause for respondents and cross-appellants (*Louis Raveson,* attorney; *Edward McCardell,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal requires us to determine the validity of an ordinance regulating peddlers in the City of Newark. The Law Division invalidated all or part of ten of the nineteen sections of the ordinance, and the Appellate Division reinstated seven of those sections. 202 *N.J.Super.* 1 (1987). We granted Newark's petition and the peddlers' cross-petition for certification, 109 *N.J.* 490 (1987). We now affirm in part and reverse in part the judgment of the Appellate Division. With the exception of section (d), we find the ordinance to be valid.

–I–

For many years, defendant, Newark, has attempted to regulate peddlers such as plaintiffs, Richard Brown and Ernest King. Both Brown and King are licensed to peddle by Newark, and King, as an honorably discharged veteran, has a statutory right to peddle. *N.J.S.A.* 45:24–9. Twenty-five years ago the Chancery Division enjoined the enforcement of a predecessor ordinance regulating peddlers, *Germano v. Keenan*, 25 *N.J.Super.* 37 (1953), and ten years ago in an unreported opinion the Appellate Division declared unconstitutional an ordinance enacted in 1978. This case requires us to review the most recent amendment contained in Newark Revised Ordinance, title 8, chapter 7, section 6, adopted on October 3, 1979 (N.R.O. 8:7–6). Plaintiffs seek a declaration of the invalidity of the ordinance and an injunction against its enforcement.

No statement of purpose accompanies the ordinance, and the parties disagree on its intended purpose. The peddlers contend that the purpose of the ordinance is to eliminate competition with retail merchants, and Newark argues that the purpose is to avoid congestion on the City's sidewalks and to protect the rights of abutting property owners, many of whom are retail merchants.

■ Our analysis begins with the basic principle that municipalities have broad power to enact and enforce ordinances to protect the public health, safety, and welfare. *Chamber of Commerce of U.S. v. State*, 89 *N.J.* 131, 155 (1982). Furthermore, the Legislature has specifically authorized municipalities to license and regulate peddlers. *N.J.S.A.* 40:52–1(c). As legislative action, municipal ordinances, like statutes, are presumptively valid. *Hutton Park Gardens v. West Orange Town Council*, 68 *N.J.* 543, 564 (1975). Legislatures, both state and local, are better situated than courts to make policy decisions concerning public health, safety, and welfare. As broad as is the police power, however, it is constrained by guarantees of due process, *Hudson Circle Servicenter, Inc. v. Kearny*, 70

*N.J.* 289, 301 (1976), and of equal protection, *Barone v. Department of Human Servs.*, 107 *N.J.* 355, 364–73 (1987), in the federal and state constitutions.

In the present case, the municipal exercise of police power manifests itself in an economic regulation of the legitimate business of peddling. For various reasons, including potential problems of street and sidewalk congestion, government has often viewed peddlers with suspicion. Concerns about economic competition and obstruction of their premises have led more established businesses, such as retail merchants, to object to the presence of peddlers. Our review, conducted in light of the diverse interests of the municipality, the peddlers, and the public, involves consideration of the purpose of the peddling ordinance and the means used to achieve that purpose. In conducting our review, we are guided by principles of substantive due process and equal protection.

Economic regulations, such as those regulating peddling, need be only rationally related to a legitimate state purpose to satisfy requirements of substantive due process. *Williamson v. Lee Optical of Okla.*, 348 *U.S.* 483, 488, 75 *S.Ct.* 461, 464, 99 *L.Ed.* 563, 572, *reh'g denied*, 349 *U.S.* 925, 75 *S.Ct.* 657, 99 *L.Ed.* 1256 (1955). If an economic regulation is not arbitrary, capricious, or unreasonable, and the means selected bear a rational relationship to the legislative objective, the regulation should be sustained. *Joseph H. Reinfeld, Inc. v. Schieffelin & Co.*, 94 *N.J.* 400, 413 (1983); *Piscataway Township Bd. of Educ. v. Caffiero*, 86 *N.J.* 308, 318, *appeal dismissed*, 454 *U.S.* 1025, 102 *S.Ct.* 560, 70 *L.Ed.*2d 470 (1981); *Robson v. Rodriguez*, 26 *N.J.* 517, 522 (1958). As a corollary, courts should not substitute their judgment for that of a legislative body, at least when the regulation is reasonably related to a legitimate governmental interest. *Williamson, supra*, 348 *U.S.* at 487, 75 *S.Ct.* at 464, 99 *L.Ed.* at 571.

Furthermore, a legislative act, whether a statute or ordinance, must not be so vague that a person of ordinary

intelligence is unable to discern what it requires, prohibits, or punishes. *Hudson Circle Servicenter, Inc., supra,* 70 *N.J.* at 301. No one should be criminally responsible for conduct that could not reasonably be understood to be proscribed. *State v. Lashinsky,* 81 *N.J.* 1, 17 (1979). That principle applies to the subject ordinance, a violation of which carries a potential maximum fine of $500 and a ninety-day term of imprisonment.

As distinguished from standards governing due process claims, federal equal protection analysis involves different tiers or levels of review. If a fundamental right or suspect class is involved, the legislative classification is subject to strict scrutiny, *Barone, supra,* 107 *N.J.* at 364–65; *Greenberg v. Kimmelman,* 99 *N.J.* 552, 564 (1985), which requires that a statute further a compelling state interest and that there be no less restrictive means of accomplishing that objective. *Barone, supra,* 107 *N.J.* at 365 (citing *Graham v. Richardson,* 403 *U.S.* 365, 91 *S.Ct.* 1848, 29 *L.Ed.*2d 534 (1971)). When it regulates a "semi-suspect" class, a legislative act is examined under "intermediate scrutiny," and must be substantially related to the achievement of an important governmental objective. *Barone, supra,* 107 *N.J.* at 365 (citing *Craig v. Boren,* 429 *U.S.* 190, 97 *S.Ct.* 451, 50 *L.Ed.*2d 397 (1976), *reh'g denied,* 429 *U.S.* 1124, 97 *S.Ct.* 1161, 51 *L.Ed.*2d 574 (1977)). If, as here, the enactment does not affect a suspect or semi-suspect class and does not attempt to regulate a fundamental right, it need be only rationally related to a legitimate state interest to satisfy federal equal protection requirements. *Ibid.* (citing *Dandridge v. Williams,* 397 *U.S.* 471, 90 *S.Ct.* 1153, 25 *L.Ed.*2d 491, *reh'g denied,* 398 *U.S.* 914, 90 *S.Ct.* 1684, 26 *L.Ed.*2d 80 (1970)).

When conducting equal protection analysis under article I, paragraph 1 of the New Jersey Constitution, we have rejected a multi-tiered analysis and employed a balancing test. *Barone, supra,* 107 *N.J.* at 368; *Greenberg, supra,* 99 *N.J.* at 567; *Right to Choose v. Byrne,* 91 *N.J.* 287, 308–09 (1982). "In striking the balance, we have considered the nature of the

affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." *Greenberg, supra,* 99 *N.J.* at 567. Although stated differently, an equal protection analysis of rights under article I, paragraph 1 of the New Jersey Constitution, like an analysis of equal protection and due process under the fourteenth amendment of the United States Constitution, may lead to the same results. *Id.* at 569.

In this case, we are not concerned with either a fundamental right or a suspect class. For equal protection purposes, the ordinance satisfies the United States Constitution if it is rationally related to a legitimate state interest. The ordinance satisfies the State constitution if, on balance, the regulation, considering the public need, does not unduly restrict the right of the peddlers to engage in their business. *Greenberg, supra,* 99 *N.J.* at 567. Similarly, for substantive due process purposes, the ordinance is valid if it reasonably relates to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Joseph H, Reinfeld, Inc., supra,* 94 *N.J.* at 413.

Newark contends generally that each section of the ordinance bears a reasonable relationship to the legitimate purpose of regulating pedestrian and vehicular traffic, and in preventing obstruction of ingress to and egress from the stores of adjacent merchants. Plaintiffs challenge the ordinance as arbitrary, impossible of compliance, irrational, vague, unreasonably burdensome, and prohibitory. In addition, they assert that the purpose of the ordinance is not to relieve traffic congestion, but to shield local merchants from competition.

The ordinance contains nineteen sections. Of these, twelve sections regulate the location of the peddler's cart on the sidewalks of Newark; four sections regulate the size and configuration of the carts; and three sections regulate other aspects of the peddler's business, including hours of operation and retention of receipts. Before us, the peddlers do not

challenge nine sections ((a), (b), (c), (g), (i), (j), (k), (r), and (s)), and we limit our review to the remaining sections ((d), (e), (f), (h), (*l*), (m), (n), (o), (p), and (q)).

 We begin with section (d), which provides that no peddler shall

[s]tation, place, set up or maintain his cart or vehicle, or allow it to remain at the same location on any sidewalk or street at a time when a sale is not being transacted.

Newark defines "peddler" as:

any person commonly referred to either as a peddler or hawker, who goes from place to place or from house to house by traveling on the streets and carries with him goods, wares and merchandise for the purpose of selling or delivering them to consumers or any person who has goods, wares and merchandise of any description sent from place to place or from house to house by traveling on the streets for the purpose of selling and delivering goods to consumers. [N.R.O. 8:7-1.]

That definition comports generally with "peddler" as defined by our cases. *Huband v. Evans*, 114 *N.J.L.* 586, 588 (Sup.Ct.1935); *Pevey v. Greenberg*, 101 *N.J.L.* 435, 436–37 (Sup.Ct.1925); *Shapiro v. Newark*, 44 *N.J.Super.* 530, 534 (Law Div.1957). Although peddling is a legitimate occupation, the right to peddle is the right to go from place to place selling one's wares, not the right to remain indefinitely at a fixed location. *Township of N. Bergen v. Lord*, 131 *N.J.Super.* 280, 283 (App.Div.1974) (citing *Newark v. Germano*, 20 *N.J.Super.* 143 (Essex County Ct.1953)). The right to peddle is limited by the rights of the abutting owners to unobstructed access to their property and by the public's right of passage over streets and sidewalks. *Stewart v. 104 Wallace Street, Inc.*, 87 *N.J.* 146, 151 (1981). Consequently, a municipality may not designate a sidewalk as a public marketplace, *see State v. Laverack*, 34 *N.J.L.* 201, 206 (Sup.Ct.1870); and the operation of a fixed place of sale, such as a newsstand, would constitute a trespass on the public easement, *823 Broad St. v. Marcus*, 17 *N.J.Misc.* 25, 28 (Essex County Ct.1939).

The peddlers acknowledge these limits on their rights, but assert that by requiring them to move unless they are making a

sale, the ordinance defeats the purpose of reducing sidewalk congestion. The reason is that while vending, the peddlers place their carts among fireplugs, telephones, parking meters, and bus stops in an "amenities zone" three feet from the curb. Forcing them to move their carts from that area unless they are making a sale will engender, not eliminate, sidewalk congestion.

At oral argument, counsel for the City of Newark conceded that "sale" should be interpreted "broadly" and in light "of common sense" to include not only the act of selling, but also the opportunity to display goods and to interact with potential customers. According to its counsel, Newark never intended that a peddler should move after selling to one customer. The point of the ordinance, as explained by counsel, is to prevent a peddler from remaining in one place indefinitely. Counsel states that if a peddler is making sales, he or she may remain in one location all day.

Furthermore, Newark acknowledges that even if a peddler must move from a particular location, he or she also satisfies the ordinance by moving to another location in the same general area. So construed, the apparent purpose of the ordinance is to prevent sidewalk congestion that obstructs the ingress and egress to the stores of adjacent merchants. In this regard, the record reveals that the sidewalks in the downtown area average twenty feet in width and that they are not normally congested. Arguably, therefore, the purpose of the ordinance may be best achieved by not unnecessarily forcing peddlers to move their carts along the public sidewalks.

██ As written, the ordinance lacks precision, a problem that is exacerbated because of its penal sanctions. *See Lashinsky, supra,* 81 *N.J.* at 17 (penal sanctions should not be imposed for conduct not reasonably understood as proscribed). If the ordinance is read literally as permitting vendors to remain in place only while they are making a sale, it is not rationally related to the purpose of reducing sidewalk congestion. *See*

*Russell v. Town of Pittsford*, 94 *A.D.*2d 410, 464 *N.Y.S.*2d 906 (1988) (town ordinance prohibiting peddlers from remaining stationary except in direct response to a request to purchase is unconstitutional as unduly restrictive because not reasonably related to alleviation of traffic congestion and preservation of town's aesthetics; ordinance also impermissibly vague). That defect not only renders the statute unconstitutional, as counsel for the peddlers contends before us, but arguably would place it beyond the power delegated to municipalities to regulate peddlers. *See Town of Nutley v. Forney*, 116 *N.J.Super.* 567, 578 (Law Div.1978); 6A E. McQuillin, *Municipal Corporations* 30 (3rd ed. 1988).

▆▆▆ To the extent that requirement is relaxed, the ordinance suffers from vagueness. As we have written:

Vagueness "is essentially a procedural due process concept grounded in notions of fair play." *State v. Lashinsky*, 81 *N.J.* 1, 17 (1979). The vagueness test "demands that a law be sufficiently clear and precise so that people are given notice and adequate warning of the law's reach." *Town Tobacconist v. Kimmelman, supra*, 94 *N.J.* [85] at 125 n. 21.

A penal statute should not become a trap for a person of ordinary intelligence acting in good faith, but rather should give fair notice of conduct that is forbidden. *Cf. Colautti v. Franklin*, 439 *U.S.* 379, 395, 99 *S.Ct.* 675, 685, 58 *L.Ed.*2d 596, 609 (1979) (disapproving statute that was found to be little more than a trap for those acting in good faith); *In re DeMarco*, 83 *N.J.* 25, 37 (1980); *State v. Lashinsky, supra*, 81 *N.J.* at 18. A defendant should not be obliged to guess whether his conduct is criminal. Nor should the statute provide so little guidance to the police that law enforcement is so uncertain as to become arbitrary. *Kolender v. Lawson*, 461 *U.S.* 352, [360], 103 *S.Ct.* 1855, 1860, 75 *L.Ed.*2d 903, 910 (1983). [*State v. Lee*, 96 *N.J.* 156, 165-66 (1984).]

The problem with the interpretation suggested by Newark's counsel is that no peddler would have the slightest notion how long before or after a sale he or she would be permitted to remain in place. The interpretation would subject the peddlers to the virtually unlimited discretion of the police, to whom the ordinance gives no guidance. That conclusion requires that we revisit *Mr. Softee v. Mayor and Council of Hoboken*, 77 *N.J.Super.* 354 (Law Div.1962), which is cited by both parties. There an ordinance that prohibited vendors and peddlers from parking a "vehicle or dispensing container for a period longer

than the time it takes to make a sale to a customer," *id.* at 361, was interpreted to prohibit "parking in one place for a long period of time," *Id.* at 375. Consistent with our invalidation for vagueness of part of the Newark ordinance, we overrule *Mr. Softee* to the extent that it may be read as validating an otherwise unconstitutionally vague ordinance.

■■■ Although we do not undertake to rewrite the Newark ordinance, some guidelines may be helpful to the parties if Newark elects to amend section (d). The term "sale" should be defined to allow a vendor to remain stationary not only while actually serving customers and while potential customers are surveying the vendor's goods, but for a specified reasonable time before and after a sale. Thus, Newark must allow vendors to set up in a location and remain there for a specified period of time to attract and complete sales, and to continue thereafter to display their wares. Conceivably Newark should permit peddlers to remain in place for one period of time while waiting to make a sale and for another period after completing a sale. To the extent that the ordinance specifies a time period for a peddler to remain in place, it enhances the possibility of surviving a vagueness challenge. We imply no view whether the ordinance could survive such an attack.

Section (e) provides no peddler shall

[s]tation, place, set up or maintain his cart or allow it to remain on any sidewalk in such a way as would (1) substantially restrict, obstruct, interfere with or impede the pedestrian's right of way; (2) substantially restrict, obstruct, interfere with or impede the ingress or egress from the abutting property; (3) create or become a nuisance; (4) increase traffic congestion, cause or increase traffic delay or hazards; (5) cause or create or constitute a danger to life, health or property; (6) sell food, drinks, ice cream or confections of any kind for immediate consumption unless he has available for public use his own litter receptacle which shall be clearly marked and maintained for his patronage use, nor shall any peddler leave any location without first picking up, removing and disposing of any trash or refuse remaining from sales made by him.

■■■ The Law Division upheld subsection (e)(1), which prohibits a peddler from substantially obstructing the public way, by interpreting this subsection in accordance with *N.J.S.A.* 2C:33–7, which prohibits purposely or recklessly rendering a

public passage "impassable without unreasonable inconvenience or hazard." The court then struck down subsections (e)(2) and (4) as "subsumed under [its] analysis in (1)," and, in addition, struck down subsections (e)(2), (3), (4), and (5) as "too vague to put a peddler on notice as to what conduct is prohibited."

The Appellate Division reversed this part of the judgment of the Law Division, finding that "[t]he four subsections reasonably protect against threats to the public interest and are readily construable to advance that purpose; whether they overlap with or are redundant of other legislative proscriptions is immaterial, *see State v. States*, 44 *N.J.* 285, 291 (1965)." 202 *N.J.Super.* at 6. In sustaining (e)(3), the Appellate Division stated: "[T]he definition of 'nuisance' should be drawn from *N.J.S.A.* 2C:33–12a." *Ibid.*

The peddlers challenge the Appellate Division's declaration of the validity of subsections (e)(2), (4), and (5). Newark contends that the purpose of subsection (e)(4), like that of subsections (e)(1) and (e)(2), is to protect against obstructions to access of abutting properties, and that subsection (e)(4), like *N.J.S.A.* 39:4–67, which prohibits parking motor vehicles where they interfere with the passage of other cars, simply prohibits vendors from causing pedestrian and traffic congestion. Looking at section (e) in its entirety, we find that the sense of the section is to cover those acts that create a "nuisance" or "danger to life, health or property." Newark's counsel agrees, and states that the ordinance prohibits only "outrageous conduct." Subject to our limiting construction, the section may stand. We leave for another day whether the ordinance is unreasonably enforced in a particular instance.

■ Plaintiffs challenge the cart size limitations contained in sections (f) and (h), which provide that no peddler shall

(f) [u]se a cart of [sic] the dimensions of which exceed 2 feet in width, 4 feet in length and 4 feet in height including wheel height, while conducting business on any sidewalk;

(h) [u]se, set up, attach, place or permit the use of any table, crate, carton, rack, device or structure of any kind to increase the selling or display capacity of his cart.

We agree with the Appellate Division that cart size restrictions are reasonably related to preventing pedestrian congestion, 202 *N.J.Super.* at 86, and therefore uphold sections (f) and (h).

The plaintiffs also challenge sections (*l*), (m), (p), and (q), which prohibit a peddler from peddling within specified distances of certain objects. The sections provide that no peddler shall

(*l*) [s]tation, place, set up or maintain his cart or allow it to remain on any sidewalk if to do so would reduce the unobstructed pedestrian right of way to less than 6 feet. The Department of Engineering may from time to time by regulation change the width of pedestrian right of way space required, as circumstances require;

(m) [e]ngage in the business of peddling within ten feet of any location where the curb has been depressed to facilitate pedestrian or vehicle movement;

(p) [e]ngage in the business of peddling on any sidewalk or along any street within 15 feet of any fire hydrant, crosswalk or driveway;

(q) [s]tation, place, set up or maintain his cart or goods against display windows of fixed location businesses, nor shall they be within 20 feet from an entranceway to any building, store, theatre, library, school, museum, movie house, sports arena or other place of public assembly.

Plaintiffs do not challenge section (b), which prohibits setting up within thirty feet of another peddler, or section (k), which requires a peddler to set up his cart at least ten feet from intersecting streets or sidewalks.

The trial court found "that it was virtually impossible for a lay person to accurately triangulate all these measurement requirements along with the ones required by sections (b) and (k)." The Appellate Division disagreed, stating: "The distance limitations reasonably serve the legislative objectives of avoiding congestion on the public sidewalks and assuring an unimpeded view into commercial premises. *See State v. Boston Juvenile Shoes*, 60 *N.J.* 249, 257 (1972). They are measurable or may be readily approximated by eye." 202 *N.J.Super.* at 6-7.

Before us, the peddlers contend that the Appellate Division exceeded the proper bounds of judicial review by substituting

its findings of fact for those of the trial court. *See Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 484 (1974) ("the appellate court should exercise its original fact finding jurisdiction sparingly and in none but the clear case where there is no doubt about the matter."). We disagree. The Appellate Division merely resorted to a standard more conducive to a finding of constitutionality, approximation by eye rather than actual measurement.

In many instances, a peddler need not simultaneously make all the distance measurements required by the ordinance. According to its counsel, moreover, Newark does not expect the peddlers to make actual measurements of the distances; an approximation will suffice. In other contexts, people often make similar measurements. For example, a motorist parking a car frequently makes numerous "eyeball" measurements to calculate the distance of the car from the curb, fire hydrants, driveways, and other cars. Similarly, a peddler need not actually measure or triangulate the distance of the cart from another object. We therefore agree with the Appellate Division that the distances reasonably serve legislative objectives and that they are measurable by eye. 202 *N.J.Super.* at 6–7.

■ Section (n) provides that no peddler shall [e]ngage in the business of selling at any location without giving a written receipt to each customer, or engage in the business of selling at any location without maintaining on his person or on the cart or vehicle receipts showing the sales made during the preceding week. The receipts shall show clearly the seller's name, business address, license number, a description of the merchandise sold, and the purchase price and shall be sequentially numbered.

The lower court sustained so much of the section as requires a peddler to issue a receipt to each customer, but invalidated the further requirement that peddlers maintain on their carts receipts from the previous week's sales. In affirming the trial court's ruling, the Appellate Division found the section requirement "unduly burdensome," since "all pertinent information is available on the written sales receipt" issued to the customers. 202 *N.J.Super.* at 8.

Doubtless the requirement of maintaining receipts on their carts imposes a burden on the peddlers. Moreover, a customer who has lost the receipt may encounter difficulty in demonstrating the purchase of an item from a particular peddler. Nonetheless, we are guided here, as we are in assessing the other provisions of the ordinance, by our duty to sustain, if possible, the constitutionality of the ordinance. *State v. Profaci*, 56 *N.J.* 346, 350 (1970); *Hurwitz v. Boyle*, 117 *N.J.Super.* 196, 202 (App.Div.1971). Because of the transient nature of their business, peddlers pose special problems to their customers. A customer who wishes to complain ought to be able to verify a purchase from an examination of the receipt at the time he or she locates the peddler. The requirement that peddlers retain the receipts on their carts fulfills a legitimate governmental purpose of avoiding altercations between peddlers and consumers. Consequently, the regulation is reasonably related to a legitimate state interest. As the United States Supreme Court has stated, "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson, supra,* 348 *U.S.* at 487–88, 75 *S.Ct.* at 464, 99 *L.Ed.*2d at 572.

Furthermore, we find that the ordinance does not violate notions of equal protection by requiring peddlers, but not merchants generally, to maintain receipts from purchases. Peddlers, because of their transiency, are distinguishable from merchants who operate from fixed locations. *Mister Softee, supra,* 77 *N.J.Super.* at 373. For the purposes of equal protection, it is sufficient that the ordinance treats all peddlers alike. *Ibid.*

Section (*o*), which prohibits peddling in proximity to bus stops, states that no peddler shall

[e]ngage in the business of peddling on any sidewalk or along any street which has been designated as a bus stop. For the purposes of this Act, the words bus

stop shall include the sidewalk and the adjoining street where that street has been designated as a bus stop by the City of Newark.

Counsel for the peddlers conceded that peddlers should not be allowed to set up their carts where buses are accepting or discharging passengers. Newark's counsel informs us that the only streets that have been designated as bus stops in their entirety are the north side of Market Street west of Broad Street and the east side of Broad Street south of Market Street. The result is that peddlers are prohibited from setting up their carts in that area. Insofar as other streets are concerned, we find that the section is subject to a limiting construction that peddlers may be prohibited within a reasonable distance, such as sixty feet (one bus length), of a bus stop sign. Newark's counsel assures us that the ordinance will be so construed. Interpreted in that manner section (*o*) surmounts the vagueness test and does not prohibit the lawful conduct of peddling. *See Gilbert v. Town of Irvington*, 20 *N.J.* 432, 437 (1956) ("[t]he power to regulate does not embrace the power to prohibit * * *.").

If section (*o*) were to proscribe "peddling along an entire block from corner to corner whenever a bus stop was designated anywhere on the block," as the Appellate Division found, 202 *N.J.Super.* at 8, it would be overbroad. Construed in light of counsels' concessions, we find that the ordinance is reasonably related to the legitimate public purpose of avoiding congestion and protecting the public in the immediate vicinity of a bus stop.

▪ Plaintiffs also contend that the ordinance is invalid because it was enacted for an improper purpose, to protect shopkeepers from competition from street vendors. *See Moyant v. Paramus*, 30 *N.J.* 528, 545 (1959) (municipality cannot exercise police power for "a purpose to shield the local shopkeepers from lawful competition, and thus to serve private interests in contravention of common rights.") (quoting *N.J. Good Humor v. Bradley Beach*, 124 *N.J.L.* 162, 171 (E. & A.1939)).

Neither of the lower courts squarely addressed the question whether the ordinance was enacted for an improper purpose. Nonetheless, the trial court stated that "there was evidence at trial to support" the allegation "that section (d) was enacted to protect the commercial business interests and companies in Newark," and found that some evidence established that those business interests considered peddlers to be both unfair competition and an "eyesore."

Although peddling is a lawful occupation, municipalities are expressly authorized to enact ordinances to license and regulate peddlers. *N.J.S.A.* 40:52–1(c). If an ordinance has both a valid and an invalid purpose, courts should not guess which purpose the governing body had in mind, but should uphold the ordinance. *Riggs v. Long Beach Township,* 109 *N.J.* 601, 613 (1988). Consequently, even if one of the purposes of the ordinance was to protect retail merchants, the ordinance will stand. The subject ordinance has the legitimate purpose of ensuring the safe and orderly flow of pedestrian and vehicular traffic.

Finally, plaintiffs contend that the ordinance does not merely regulate but prohibits the business of peddling. If the effect of the ordinance were to prohibit peddling, it would exceed Newark's legitimate exercise of the police power. *Moyant, supra,* 30 *N.J.* at 544; *Gilbert, supra,* 20 *N.J.* at 437; *Mister Softee, supra,* 77 *N.J.Super.* at 370–71; *Germano, supra,* 25 *N.J.Super.* at 41. It is uncertain whether in light of our construction, the ordinance has that effect. On the record before us, we cannot reach that conclusion. If, however, the ordinance as enforced has the effect of prohibiting peddling, plaintiffs may institute an appropriate action.

The judgment of the Appellate Division is affirmed in part and reversed in part. We remand the matter to the Law Division for the entry of a judgment consistent with this opinion.

GARY S. STEIN, J., concurring in part and dissenting in part.

This case involves a challenge to the validity of an ordinance of the City of Newark imposing a multiplicity of restrictions on the business of peddling. Of the ordinance's nineteen sections, twelve impose restrictions on the location of a peddler's cart on the City's sidewalks, four regulate the size and configuration of the carts, and three regulate other aspects of the peddler's business, including hours of operation and retention of receipts. As the majority opinion acknowledges, the ordinance represents Newark's third attempt in the past twenty-five years to regulate the business of peddling. *Ante* at 571.

After trial, the Law Division invalidated all or part of ten sections of the ordinance. The Appellate Division reversed in part, reinstating seven of these sections. *Brown v. City of Newark*, 202 *N.J.Super.* 1 (App.Div.1987). The Court today upholds all but one section of the ordinance, acknowledging, however, that if "the ordinance as enforced has the effect of prohibiting peddling, plaintiffs may institute an appropriate action." *Ante* at 584. To the extent that the majority opinion reflects the Court's concern that this ordinance, in its specific applications, may become a mechanism for harassment or selective prosecution of peddlers, I share that concern.

Thus, I am fully in accord with the Court's conclusion that section (d), the so-called "perpetual motion" provision of the ordinance, read literally, "is not rationally related to the purpose of reducing sidewalk congestion," *ante* at 576–577, and, if construed as suggested by Newark's counsel, is void for vagueness. *Ante* at 578. However, I disagree with the majority's conclusions in upholding sections (*l*), (m), (p), and (q) of the ordinance, invalidated by the Law Division but reinstated by the Appellate Division, and sections (e)(4) and (5), which also were invalidated by the Law Division and upheld by the Appellate Division.

Sections (*l*), (m), (p), and (q) restrict the location of the peddler's cart on the sidewalk. Among the other sections that impose analogous restrictions are section (b), which prohibits a peddler from maintaining a cart on the sidewalk closer than thirty feet to another peddler, and section (k), which prohibits a peddler from maintaining his cart or merchandise closer than ten feet from intersecting streets or sidewalks. In addition, section (o) prohibits peddling on the sidewalk along any street that has been designated as a bus stop, although the majority opinion construes this section to apply only to a point within sixty feet of a bus-stop sign, except for the "north side of Market Street west of Broad Street and the east side of Broad Street south of Market Street," which are "designated as bus stops in their entirety * * *." *Ante* at 583.

Therefore, apart from the requirements of sections (*l*), (m), (p), and (q), a peddler must be thirty feet from any other peddler, ten feet away from an intersecting street or sidewalk, and at least sixty feet away from a bus stop.

The four sections invalidated by the trial court prohibit a peddler from engaging in the following conduct:

(*l*) [to] [s]tation, place, set up or maintain his cart or allow it to remain on any sidewalk if to do so would reduce the unobstructed pedestrian right of way to less than 6 feet. The Department of Engineering may from time to time by regulation change the width of pedestrian right of way space required, as circumstances require;

(m) [to] [e]ngage in the business of peddling within 10 feet of any location where the curb has been depressed to facilitate pedestrian or vehicle movement;

\* \* \* \* \* \* \* \*

(p) [to] [e]ngage in the business of peddling on any sidewalk or along any street within 15 feet of any fire hydrant, crosswalk or driveway.

(q) [to] [s]tation, place, set up or maintain his cart or goods against display windows of fixed location businesses, nor shall they be within 20 feet from an entranceway to any building, store, theatre, library, school, museum, movie house, sports arena or other place of public assembly.

Thus, in addition to observing a minimum distance of thirty feet from another peddler, ten feet from an intersecting street or sidewalk, and sixty feet from a bus stop, a peddler must maintain an unobstructed pedestrian right-of-way of not less

than six feet, and place his cart at least ten feet from a curb depression, fifteen feet from a fire-hydrant, crosswalk, or driveway, and *twenty feet from the entranceway to any building*, store, theatre, library, school, museum, movie house, sports arena or other place of public assembly, bearing in mind the observation in the majority opinion that the sidewalks in the downtown area of Newark average only twenty feet in width. *Ante* at 576–577. Moreover, section (d) of the ordinance, prior to its invalidation, would have compelled a peddler who had completed these observations and calculations to repeat them throughout the working day each time that the cart was relocated.

Focusing on sections (*l*), (m), (p), and (q), the trial court determined that the distance requirements imposed by these provisions were invalid, concluding that the multiple regulations affecting the lawful placement of a peddler's cart were so complex and detailed that it would be unreasonable for the City to demand compliance:

> In this regard, Ms. Jackson testified that she was unable to triangulate the distances either with or without instruments and that, in order to measure at all, the peddler had to leave his or her cart unattended. Mr. King and Mr. Brown testified that they were unable to figure out the distances alone and were only able to figure out the distances, but *not* triangulate them, with the aid of another person and then only on a week-end when there was less pedestrian traffic. Frederick Kent the plaintiff's expert, testified that he needed measuring instruments to take the measurements, and that he had difficulty triangulating those measurements. *Officer Gabriel, on page 124 of his deposition, testified that it was extremely difficult, if not impossible, for him to determine if a peddler was complying with the distance requirements of the ordinance.*

> * * * * * * * *

> Furthermore, these sections require peddlers to make calculations from innumerable locations many times during the day since, under section (d), peddlers are prohibited from remaining in even a theoretical "legal" location when a sale is not being transacted. If a peddler attempts to comply with the ordinance by using rulers and attempting to triangulate the distances, he or she is in violation of 8:7–6(i) by leaving his or her cart unattended while completing the calculations. There was testimony from Officer Pollitto that he could not triangulate the distances required by the ordinance but had to rely instead on

"eyeball measurements." If those who are charged with the enforcement of the ordinance are unable to determine accurately where it is legal to peddle, we cannot reasonably expect those who are asked to comply with the ordinance to do more. Indeed, the testimony, which we found to be credible, made the point repeatedly that the triangulation calculations could not be measured. [*Brown v. City of Newark, supra,* No. L34066-81 (slip op. at 18-19) (emphasis added).]

Notwithstanding this finding of fact by the Law Division based on the testimony before it, the Appellate Division concluded that the distances "are measurable or may be readily approximated by eye." *Brown v. City of Newark, supra,* 202 *N.J.Super.* at 7. The majority observes that the question whether the ordinance can be complied with is a question of *law* rather than fact, and agrees with the Appellate Division that "the distances reasonably serve legislative objectives and that they are measurable by eye." *Ante* at 581.

Whether or not these complicated rules governing where a peddler may or may not park his cart are too complex to be complied with simultaneously is obviously a question of fact—not law. Thus, I believe the Court has unwisely ignored factual findings by the trial court that are "supported by adequate, substantial and credible evidence." *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483-84 (1974). Moreover, the majority ignores the regulatory context in which the Law Division judge invalidated these sections. In concluding, based on the testimony, that "the triangulation calculations could not be measured," the trial court obviously was impressed by the practical difficulties inherent in conducting a peddling business while being required at all times to observe and comply with a profusion of distance restrictions. I question whether the majority would find such distances readily "measurable by eye" were it to attempt such measurements from the perspective of a peddler selling from a cart on the sidewalks of Newark, required to move that cart from time to time, and to recalculate the required distances each time the cart is stopped at a new location. The trial court concluded that these sections were

unduly burdensome because the myriad of distance restrictions were "impossible of compliance," and its finding was supported by testimony from peddlers as well as police officers. I would uphold the Law Division's invalidation of sections (*l*), (m), (p), and (q).

I also would invalidate section (e)(4), which prohibits a peddler from maintaining a cart in such a way as would "increase traffic congestion, cause or increase traffic delay or hazards;" and section (e)(5), which prohibits a peddler from maintaining a cart in a way that would "cause or create or constitute a danger to life, health or property."

The Court construes section (e)(5), based on counsel's representation at oral argument, as prohibiting only "outrageous conduct," and concludes that counsel's representation saves the ordinance from invalidity because of vagueness. Similarly, the Court sustains section (e)(4) based on a representation by counsel that that section "simply prohibits vendors from causing pedestrian and traffic congestion." *Ante* at 579–580.

I disagree with the Court's conclusion that these sections of the Newark ordinance can somehow acquire meaning sufficiently precise to avoid constitutional challenge on the basis of counsel's generalized concessions at oral argument before us. Not only are such concessions of no value to peddlers who must conform their conduct to the requirements of the Newark ordinance, but they offer little or no guidance to those charged with its enforcement. The inevitable result will be selective, arbitrary, and individualized enforcement of these vague, general, and obfuscatory provisions. I would invalidate sections (e)(4) and (e)(5) on vagueness grounds. *See Papachristou v. Jacksonville*, 405 *U.S.* 156, 162, 92 *S.Ct.* 839, 843, 31 *L.Ed.*2d 110, 115 (1972) (vagueness challenge sustained where vagrancy ordinance "fail[ed] to give a person of ordinary intelligence fair notice that his contemplated conduct [was] forbidden" by the

ordinance, and because it "encourage[d] arbitrary and erratic arrests and convictions"); *State v. Cameron,* 100 *N.J.* 586, 591 (1985) ("[t]o avoid the pitfall of vagueness, zoning ordinance must enable a person of 'common intelligence, in light of ordinary experience' to understand whether contemplated conduct is lawful").

I join in the majority's resolution of the challenges asserted to sections e(1), e(2), e(3), (n), and (*o*) of the ordinance.

O'HERN, J., dissenting.

I would have thought that an ordinance that defined the peddler's activity as the Supreme Court has done would pass muster. The plaintiffs, however, have used the label "perpetual motion ordinance" to disable and to raise doubt about an otherwise familiar description of the business of peddling.

The idea of the peddler is that of "an itinerant or traveling trader, who carries goods about in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business." *Emert v. Missouri,* 156 *U.S.* 296, 308, 15 *S.Ct.* 367, 369, 39 *L.Ed.* 430, 433 (1895) (citation omitted); *see also Wagner v. City of Covington,* 251 *U.S.* 95, 101, 40 *S.Ct.* 93, 94, 64 *L.Ed.* 157, 167 (1919) ("an itinerant vendor or peddler" is a person "traveling from place to place within the state selling goods that are carried about with the seller for the purpose."). Our law is the same. A peddler is "one who travels about with merchandise for the purpose of selling it." *Hewson v. Englewood,* 55 *N.J.L.* 522, 523 (Sup.Ct.1893). The City of Newark in turn defines "peddler" in its ordinance as

> any person commonly referred to either as a peddler or hawker, who goes from place to place or from house to house by traveling on the streets and carries with him goods, wares and merchandise for the purpose of selling or delivering them to consumers or any person who has goods, wares and merchandise of any description sent from place to place or from house to house by traveling on

the streets for the purpose of selling and delivering goods to consumers. [N.R.O. 8:7–1.]

The Newark ordinance restricts peddlers' selling practices in that no peddler may

[s]tation, place, set up or maintain his cart or vehicle, or allow it to remain at the same location on any sidewalk or street at a time when a sale is not being transacted. [N.R.O. 8:7–6(d).]

The plaintiffs have succeeded in invalidating the latter provision, which codifies what peddlers are supposedly licensed to do—to go "from place to place." What they seek is not to peddle but to set up shop.

The problem is that the municipal regulator is squeezed at both ends of the spectrum. Generally a municipality is forbidden to set aside a portion of its streets as a marketplace where space may be used by peddlers for the sale of merchandise. *McDonald v. Mayor and Common Council of Newark*, 42 *N.J.Eq.* 136, 137 (Ch.1886). Even the peddler's license afforded by statutory grace to any veteran, *N.J.S.A.* 45:24–9, does not carry with it a license to sell "refreshments or merchandise at a fixed stand." *Pevey v. Greenberg*, 101 *N.J.L.* 435, 437 (Sup.Ct. 1925). The best that a municipality can do is oversee an uneasy alliance between competing peddlers, consumers, and the demands of the public in maintaining fixed zoning boundaries. This is no easy burden, as the "hot dog wars" of Atlantic City attest. *The Press, Atlantic City*, Sept. 15, 1983, at 1, 18.

Part of the reason for the regulatory stalemate is the ambivalence that we feel toward street peddlers. Many of us retain images of peddlers-past who enhanced our neighborhoods. Others enjoy the ambiance of a hot dog alfresco or savor chestnuts roasting on an urban street. Those are the pleasant aspects of peddling. The unpleasant part is that we have a sense as a community that we do not want trays of sausages and costume jewelry camped outside of our best retail stores. The problem thus requires maintaining a delicate balance be-

tween the nostalgic aspects of peddling and the intrusive aspects.

Hence we try by ordinance to provide some guidance to the municipal officials who must balance these competing commercial interests. The Court faults Newark for not putting a time clock on the business of peddling. It suggests that Newark must define "one period of time" before it may ask the peddlers to move along. *Ante* at 578. After what time? Fifteen minutes, twenty minutes? Newark seems willing to accommodate a peddler who may be serving a group of customers, let us say coming out of the Federal Courthouse for a bite of lunch in the fresh air. Newark says that the ordinance means the peddler may remain in place as long as he is serving customers. If Newark adopted the Court's twenty-minute rule, would a police officer be arbitrary in his enforcement of the ordinance if he did not require the peddler to move on?

In setting its span of time rule, the Court disapproves of the *Mr. Softee*[1] decision that made sense of the balance between the ice cream vendor's right to sell cones to children on a hot summer night and the community's interest in a quiet street. Must each town fix a sort of twenty-four-second clock for the sale of an ice cream pop?

Is it not unusual that the grandest visions of our law (*i.e.*, due process, just compensation, speedy trial), and some lesser (*i.e.*, careless driving, negligence), may be defined without precision, but Newark's peddler's ordinance must be so exact?

We have before us only a facial challenge to Newark's ordinance. Absent infringement of first amendment rights, a facial challenge to a commercial regulation must demonstrate that the ordinance is "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman*

---

[1] *Mr. Softee v. Mayor and Council of Hoboken*, 77 *N.J.Super.* 354, 375 (Law Div.1962) (giving "reasonable interpretation" to ordinance prohibition against parking longer than for sale to a customer).

*Estates, Inc.,* 455 *U.S.* 489, 497, 102 *S.Ct.* 1186, 1193, 71 *L.Ed.*2d 362, 371 (1982). Even an "escort service" cannot make a facial challenge to governmental regulation of its activities. "Facial invalidation is 'strong medicine' which should be used 'sparingly and only as a last resort.' " *IDK, Inc. v. County of Clark,* 836 *F.*2d 1185, 1199 (9th Cir.1988) (quoting *Broadrick v. Oklahoma,* 413 *U.S.* 601, 613, 93 *S.Ct.* 2908, 2916, 37 *L.Ed.*2d 830, 841 (1973)). There is little fear that overbreadth will chill free expression by the street merchants. And there is no evidence that Newark has been or will be arbitrary in its treatment of this class of merchants.

At oral argument, counsel for the City of Newark conceded that "sale" had to be interpreted "broadly" and in light "of common sense" to include not only the act of selling but also the opportunity to display goods to potential customers. Counsel informs us that Newark never intended that a seller should move after selling to one customer. The point of the ordinance, as explained by counsel, is to prevent a peddler from remaining in one place indefinitely. Furthermore, Newark acknowledges that even if a peddler must move from a particular location, he or she satisfies the ordinance by moving to another location in the same general area.

I would sustain section (d) of the Newark ordinance against a facial challenge. It codifies the time-honored understanding of what peddling is.

*For affirmance in part, reversal in part and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK and GARIBALDI—5.

*Concurring in part; dissenting in part* —Justice GARY S. STEIN—1.

*Dissenting* —Justice O'HERN—1.