775 A.2d 65 (2001)
Howard FORSTROM, individually and on behalf of his minor son, Gregory Forstrom, Plaintiff-Respondent,
v.
Robert BYRNE, in his official capacity as Superintendent of the Fair Lawn Public Schools, and the Board of Education for the Borough of Fair Lawn, Defendants-Respondents, and
New Jersey Department of Education, Intervenor-Appellant.
Howard Forstrom, individually and on behalf of his minor son, Gregory Forstrom, Plaintiff-Respondent,
v.
Robert Byrne, in his official capacity as Superintendent of the Fair Lawn Public Schools, and the Board of Education for the Borough of Fair Lawn, Defendants-Appellants,
New Jersey Department of Education, Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 2001.
Decided May 21, 2001.
*67 Brian J. Duff argued for appellants Robert Byrne and Board of Education for the Borough of Fair Lawn in A-2886-99T2 (Lamb, Hartung, Kretzer, Reinman & DePascale, attorneys; Mr. Duff, on the brief).
David E. Gordon (Home School Legal Defense Association) of the Tennessee bar, admitted pro hac vice, argued the cause for respondent Howard Forstrom in A-2731-99T2 and A-2886-99T2 (Michael P. Farris, Mr. Gordon, and Russell Teschon, on the brief).
Todd J. Schwartz, Assistant Attorney General, argued the cause for intervenor in A-2731-99T2 (John J. Farmer, Jr., Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Arlene Goldfus Lutz, Deputy Attorney General, on the brief).
Before Judges KEEFE, EICHEN and STEINBERG.
*66 The opinion of the court was delivered by KEEFE, P.J.A.D.
In these appeals, which we consolidate for the purpose of issuing our opinion, the issue presented is whether a child who is educated at home is entitled to federal and state funded speech therapy services. We hold that current State education law, which differentiates between nonpublic school students and home-schooled students with respect to providing funds for speech therapy, is constitutional, but in the context of the facts of this case was unconstitutionally applied to the infant plaintiff.
These are the pertinent facts that gave rise to this appeal. Plaintiff, Howard Forstrom, individually and on behalf of his minor son, Gregory Forstrom, brought this lawsuit against their local school district, defendant Board of Education for the Borough of Fair Lawn, and its Superintendent, defendant Robert Byrne (the defendants). Plaintiff sought a declaration that Gregory is entitled to receive speech and language services and reimbursement for the cost of speech therapy services from August 4, 1997, until services are made available to him. Plaintiff's complaint alleged federal and state statutory and constitutional violations.
Gregory attended Pre-School at the Fair Lawn Public Schools and was evaluated as needing speech therapy for the 1997-98 school year. Thereafter, plaintiff and his wife decided to educate Gregory at home. Plaintiff requested defendants to provide speech therapy to Gregory in accordance with the evaluator's recommendation. Plaintiff was willing to bring Gregory to a public school to receive the therapy. However, because Gregory was being educated at home and not at a "public" or "nonpublic school," defendants denied him speech and language services. Defendants' denial of services was based on a directive issued by the New Jersey Department of Education (the Department), which intervened in this case. Before instituting suit in the Law Division, plaintiff requested both mediation and a due process hearing from the Department. Both requests were denied for the reason that Gregory was not entitled to benefits under either State or federal law as a home-schooled child.
On motions for summary judgment filed by all parties, the Law Division found in favor of plaintiff. The trial judge held that Gregory was entitled to a pro-rata allotment of federal education funds available to students attending nonpublic schools, that the Department had engaged *68 in rule making in violation of the New Jersey Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, when it defined "nonpublic school," and that both the Department and defendants violated Gregory's equal protection right to receive special education services under the New Jersey Constitution. On December 17, 1999, the judge ordered defendants to reimburse plaintiff up to $862.76 for two onehalf hour speech therapy sessions per week during the school year from September 1997 to the date of the judgment. The defendants and the Department filed separate appeals from that judgment.
In the first appeal, the Department asserts that the trial judge erred in determining that children instructed at home fall within the definition of "nonpublic school" students under state and federal law. In the second appeal, defendants make two additional claims. They maintain that they acted according to the Department's directive and should not be held to answer for that. They also claim that if home schooling is analogous to attendance at nonpublic schools, Gregory is not entitled to speech therapy services under the federal regulations promulgated under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.A. §§ 1400-87. In both appeals, the Department and defendants claim that the judge erred in ruling that the Department engaged in rule making in violation of the APA and that the judge erred in ruling that the denial of speech therapy services to Gregory violated his rights under the New Jersey Constitution.
In summary, we hold that, under extant state statutes, education at home does not fit within the definition of a "nonpublic school," nor are speech therapy services mandated for children who are home schooled under federal or state statutes, or their implementing regulations. In addition, the Department did not engage in rule making in violation of the APA. We also hold, as a general proposition, that the differentiation between the treatment of nonpublic school students receiving speech therapy benefits and a home-schooled child is not a violation of the equal protection clause of the United States or New Jersey State Constitutions. However, we conclude that under the facts of this case, the law as applied to the infant plaintiff denied him equal protection.
Depositions of Fair Lawns' Supervisor of Special Education provides additional background for discussion of the issues. She explained that all of the funding for special education and related services (including speech therapy) comes from federal allocations, pursuant to IDEA, plus a specific allocation from State money. Under the IDEA, specifically 20 U.S.C.A. § 1412(a)(10)(A) and 34 C.F.R. § 300.453, each local school district must provide services to children in "private schools." The funding for such services is derived by a formula that produces an amount that is proportional to the number of private school children with disabilities as compared to the total number of children with disabilities in the school district. Ibid.
On December 1, 1997, the Fair Lawn Public Schools conducted a head count of students qualified to receive the benefit of IDEA funds. Because Gregory was not on the rolls of the Fair Lawn Public Schools or a "nonpublic school" on that date, he was not included in the head count. Had Gregory attended a nonpublic school, he would have been eligible for a portion of federal funds because he had been classified as eligible for speech therapy services. For the 1997-98 school year, Fair Lawn had 792 students eligible for special education and related services (including speech therapy). The federal government *69 gave the Fair Lawn Public Schools $510 per child.
This deposition testimony must be understood in the context of the Department's interpretation of the IDEA. Prior to the institution of this suit, the Director of the Department's Office of Special Education Programs informed plaintiff that funding under the IDEA is for students enrolled in public and private schools, and, further, the question of whether home schooling constitutes enrollment in a private school is, according to the federal government, a question of state law. Finally, the Director informed plaintiff that under New Jersey's statutory law home schooling was not the equivalent of enrollment in a private school.

I.
The IDEA provides funding for special services rendered to children with disabilities in three circumstances: children who are enrolled in public school; children who are placed in private schools by a public agency; and children placed in private schools by their parents. Hooks v. Clark Cty. Sch. Dist., 228 F.3d 1036, 1039 (9th Cir.2000), cert. denied, ___ U.S.___, 121 S.Ct. 1602, 149 L.Ed.2d 468 (2001). It is undisputed that Gregory does not fit within either of the first two categories. Although New Jersey by statute N.J.S.A. 18A:38-25, and many other states, by statute, permit home schooling by statute the IDEA does not mention or define it. Regulations promulgated pursuant to the IDEA define "private school children with disabilities" as "children with disabilities enrolled by their parents in private schools or facilities...." 34 C.F.R. § 300.450. What constitutes a private school, however, is determined by state law. Hooks, supra, 228 F.3d at 1039.
In determining that the IDEA leaves the definition of "private school" to state law, the Hooks court relied, in part, on a policy letter issued by the United States Office of Special Education Programs (OSEP), which under 20 U.S.C.A. § 1402(a) is charged with implementing and enforcing the IDEA. 228 F.3d at 1040. That letter states that the "determination of whether a home education constitutes private school placement must be made on the basis of state law." Ibid. (quoting OSEP policy letter, 18 Indiv. with Disabilities Law Rep. 742, 744 (1992)). The Department in this case relies on the same policy letter.
An individual had written to OSEP with the question: "[a]re children with disabilities who are being educated at home to be considered private school students for the purposes of determining whether to provide them with special education or related services?" 18 Indiv. with Disabilities Educ. Law Rep. 742, 742 (1992). The Director of the OSEP replied:
Your third question asks whether students with disabilities who are being home educated are covered by the terms of 34 C.F.R. § 300.403 and 34 C.F.R. § 300.452. Under these provisions, public agencies shall make special education and related services available to children with disabilities who have been enrolled by their parents in private schools or facilities. Part B, however, does not define the term "private school or facility." Consequently, the determination of whether a particular home education arrangement constitutes the enrollment of a child with a disability in a private school or facility must be based on State law. If, under the law of your State, home education constitutes enrollment in a private school or facility, then the requirements of 34 C.F.R. § 300.403 and 34 C.F.R. § 300.452 would apply.

[Id. at 744.]
*70 The Hooks court also noted that the United States Supreme Court has taken guidance from OSEP policy letters to define ambiguous provisions of the IDEA. Hooks, supra, 228 F.3d at 1040 (citing Honig v. Doe, 484 U.S. 305, 325 n. 8, 108 S.Ct. 592, 605 n. 8, 98 L.Ed.2d 686, 708 n. 8 (1988)). The court added that "Congress explicitly ratified OSEP's view that States must define the ambit of `private schools.'" Ibid. The court stated:
Specifically, the amended IDEA provides inter alia that "[t]he term `elementary school' means a nonprofit institutional day or residential school that provides elementary education, as determined under State law." 20 U.S.C.A. § 1401(5) (2000) (emphasis added). Elsewhere, the new IDEA's definition of "secondary school" is likewise committed to "State law." 20 U.S.C.A. § 1401(23) (2000).

[Ibid.]
When the United States Department of Education issued new IDEA regulations on March 12, 1999, it reiterated its position that state law dictates whether instruction at home constitutes a "private school." The regulations provide:
Definition of "Private School Children With Disabilities" (§ 300.450)
Comment: Several commenters asked that the Department clarify whether children with disabilities who are home-schooled are included in the definition of "private school children with disabilities".
Discussion: State law determines whether home schools are "private schools." If the State recognizes home schools as private schools, children with disabilities in those home schools must be treated in the same way as other private school children with disabilities. If the State does not recognize home schools as private schools, children with disabilities who are home-schooled are still covered by the child find obligations of SEAs and LEAs, and these agencies must insure that home-schooled children with disabilities are located, identified and evaluated, and that FAPE is available if their parents choose to enroll them in public schools.
[64 Fed.Reg. 12406, 12602 (Mar. 12, 1999).]
Thus, case law, federal regulations, and the OSEP's policy letter support the conclusion that New Jersey law determines whether home educated children in New Jersey receive special education and related services under the IDEA.
We now turn our attention to relevant New Jersey statutory law on the subject. As noted earlier, our compulsory school attendance law permits home schooling. N.J.S.A. 18A:38-25 provides:
Every parent, guardian or other person having custody and control of a child between the ages of six and 16 years shall cause such child regularly to attend the public schools of the district or a day school in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainments or to receive equivalent instruction elsewhere than at school.
This provision divides children into three groups: (1) those attending public schools; (2) those attending "a day school in which there is given instruction equivalent to that provided in the public schools"; and (3) those who, as Gregory, "receive equivalent instruction elsewhere than at school." In the context of this statute it is obvious that the Legislature used the word "school" in its traditional sense as "[a]n institution or place for instruction or education." Black's Law Dictionary, 1344 (6th ed.1990). Thus, the process of educating a child at home (home schooling) is *71 not the equivalent of a "school," because it takes place "elsewhere than at school."
The words "private school" do not appear in the compulsory education statute. However, the Legislature has defined "private school" elsewhere as "a school, under college grade, which does not derive its support entirely or in part from public funds." N.J.S.A. 18A:1-1. Here, "school" is again used in its institutional sense as a "place" where children receive education. It is akin to the second category or group delineated in our compulsory education statute as those attending "a day school in which there is given instruction equivalent to that provided in the public schools." N.J.S.A. 18A:38-25.
Unfortunately, when it came to addressing remedial services for children with disabilities, the Legislature did not use the phrase "private schools," as distinguished from "public schools." Rather, in its legislative findings and determinations section, it stated:
The Legislature hereby finds and determines that the security and welfare of the State require that all school-age children be assured the fullest possible opportunity to develop their intellectual capacities. In order to achieve this objective it is the intent of this Legislature to require that the State and local communities identify and provide remedial services for handicapped children in both public and nonpublic schools.

[N.J.S.A. 18A:46-19.1.]
In the very next section of the statute "nonpublic school" is defined as:
[A]n elementary or secondary school within the State, other than a public school, offering education for grades kindergarten through 12, or any combination of them, wherein any child may legally fulfill compulsory school attendance requirements and which complies with the requirements of Title VI of the Civil Rights Act of 1964 (P.L. 88-352).

[N.J.S.A. 18A:46-19.2(b).]
Further, with specific reference to speech therapy services, the Legislature provided:
Each board of education shall provide for the services of a certified speech language specialist for each child attending a nonpublic school located in the school district and classified pursuant to N.J.S.A. 18A:46-8 as requiring services of a certified speech-language specialist.

[N.J.S.A. 18A:46-19.4.]
There is no indication in the relevant statutory language that the Legislature intended to provide these services "elsewhere than at school," which is how it had previously referred to home schooling in the compulsory education law. Further, the Legislature's use and definition of the phrase "nonpublic school" is consistent with its earlier definition of "private school." Both clearly connote the concept of "school" as a place where education is received. Our Legislature has provided guidance in the interpretation of its acts. It explained:
In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.

[N.J.S.A. 1:1-1.]
We have simply followed the legislative mandate in addressing the relevant statutes. Further, the context in which the *72 Legislature has used the word "school" is in accord with our highest court's understanding of the word. In N.J. Carpenters Apprentice Training & Educ. Fund v. Bor. of Kenilworth, the Court stated:
"School," as ordinarily used, has two meanings: a broad one, including all institutions of learning, or a more narrow one, including only primary and secondary schools. See, e.g., Black's Law Dictionary 1511 (4th Ed.1951) ("An institution or place of learning of a lower grade, below a college or university. A place of primary instruction. The term generally refers to the common or public schools, maintained at the expense of the public." (citation omitted)); 78 C.J.S. Schools and School Districts § 2 at 37 (1995) ("The word `school' is a generic term of many definitions denoting an institution or place for instruction or education.... A `school' is a place where instruction is imparted to the young; it is an institution of learning of a lower grade, below a college or university."); but see 84 C.J.S. Taxation § 283 at 566 ("[A]s used in the exemption laws, [school] has been defined as any institution of learning.").
[147 N.J. 171, 178-79, 685 A.2d 1309 (1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997).]
Therefore, plaintiff's urging that the word "school" must encompass the process of education or "schooling," so as to include home education, does not ask for an interpretation of ambiguous language, but rather requires us to legislate a result that is beyond our power, no matter how desirable that result may be.[1]
Aside from the issue of statutory construction, or indeed what perhaps drove the trial judge to a result contrary to ours, was the judge's observation that there is a contradiction in the Department's interpretation of our special education statutes and the federal law requirement that all children be identified and evaluated for disabilities. Under the IDEA, all children must be evaluated for special education and related services. 20 U.S.C.A. § 1412(a)(3); 34 C.F.R. § 300.451(a). The trial judge found it to be a contradiction that New Jersey would evaluate all children as required by the IDEA, but refuse to provide services for home-schooled children in need of services once identified. Accordingly, the judge found that the phrase "nonpublic school" must be interpreted to include home schooling.
Plaintiff adds to the apparent contradiction by focusing upon the first sentence of N.J.S.A. 18A:46-19.1, noting that the Legislature desired "all school-age children be assured the fullest opportunity to develop their intellectual capacities." Plaintiff argues that, to effectuate legislative intent, we must interpret the otherwise clear definition of "nonpublic school," as used in the succeeding section of the statute, to encompass home schooling. Plaintiff relies upon Singleton v. Consolidated Freightways Corp. to argue that legislative intent is to be perceived from the whole statute, and all parts must be read so that they are in alignment with the primary intent of the act. 64 N.J. 357, 362, 316 A.2d 436 (1974). The Singleton Court, however, stated "[w]hile liberality of construction of remedial legislation is desirable, we cannot ignore the plain *73 meaning of the language employed by the Legislature." Ibid.
That is true here. In point of fact, there is no contradiction. Federal law requires only that the state make such services available to public school and private school students. There is no mandate that every child must receive them. Indeed the federal regulations make it clear that no private "individual right" has been created by the IDEA. 34 C.F.R. § 300.454(a)(1). Further, as noted earlier, the federal agency's interpretation of its own statute and regulations acknowledges that some children may not be entitled to benefits if the state does not consider home schooling the equivalent of a "private school." Lastly, in Hooks, supra, the court considered this very argument and rejected it. 228 F.3d at 1041. Thus, we conclude that the Legislature intended to differentiate between nonpublic school students who qualified for such services and children who are home schooled, at least in the context of where the services are to be delivered and who receives the federal and state funds for the services.

II.
Defendants and the Department contend that the trial judge also erred in ruling that the Department engaged in rule making in violation of New Jersey's Administrative Procedure Act. We agree that the judge erred.
The trial judge stated that the Department under the guise of its discretionary authority issued the Home School Handbook (1997), which defined "school" in the phrase "nonpublic school" as being only an "institution" or "edifice" as opposed to the process of learning or acquiring compulsory education at private expense. The judge summarized that the Department purported to entirely exclude only home schooled disabled children from publicly funded remedial education solely based on the place where they are receiving their private mandatory kindergarten through twelfth grade education. She called this exclusion the Department's "handbook edict" and determined that it was a "conclusory pronouncement." She cited to no other sources for the Department's ruling on distribution of these special education funds and claimed that the Department only relied on the Handbook as the source for its policy.
The Handbook has a section on special education, which provides in part:
[C]hildren with educational disabilities who are educated at home are not covered by Chapter 192 or Chapter 193 services [nonpublic auxiliary and handicapped services programs originally set forth in L. 1977, c. 192 and 193 and codified at N.J.S.A. 18A:46-19.1 to -19.9 and N.J.S.A. 18A:46A-1 to -17]. These services are available only to pupils with educational disabilities who are enrolled full-time in nonpublic elementary and secondary schools as defined in N.J.S.A. 18A:46A-1 et seq. and 18A:46-19.1 et seq.

For a child with educational disabilities who is being educated at home, the public school district must be ready to implement the special education program described in the individualized education program (IEP) if the parents reenroll the child in the public school. In addition, the public school district must be ready to review the IEP annually and be ready to conduct a reevaluation every three years. The public school district should contact the parents of the classified child who is being educated at home to offer these services. Documentation of such contact and any evaluations or IEPs should be maintained in the child's record.
*74 The trial judge ruled that the Department's exclusion of children educated at home from special education was an administrative rule because it fulfilled each of the six factors enumerated in Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 331, 478 A.2d 742 (1984). In Metromedia, the Court stated:
[A]n agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.

[Id. at 331-32, 478 A.2d 742.]
The trial judge found a violation because none of the APA procedural or substantive prerequisites for adoption of a rule were followed.
The judge erred in stating defendants and the Department only pointed to the Department's Handbook as the source for excluding home-schooled children from an equitable share of remediation funds. That observation ignored the fact that the Department provided the judge with an OSEP letter opinion, 18 Indiv. with Disabilities Law Rep. 742 (1992), and citations to N.J.S.A. 18A:46-19.1 and -19.4. In any event, the Department correctly argues that because the definition of nonpublic schools used in the Handbook is derived from the relevant statutes, rule making was not required.
While some of the Metromedia factors appear to support the conclusion that the Department's decision was rule making, such as that the Department's interpretation is intended to have wide coverage (factor one), and that it is intended to be applied generally and uniformly to all similarly situated persons (factor two), it is factor four that is dispositive: whether the determination prescribes a legal standard that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization. Id. at 329, 478 A.2d 742.
As explained earlier, we agree with the Department that the exclusion of a home school from the definition of "nonpublic school" is based squarely on the New Jersey statutory provisions. We need not repeat that analysis.
The trial judge also concluded that the Department's determination that there was no requirement to provide special education and related services to children who are instructed at home directly conflicts with its position that IDEA funds can be used for all children for evaluation. This *75 finding would fall within the second part of factor five from Metromedia, supra, i.e., that the determination represents a "material and significant change from a clear, past agency position on the identical subject matter." 97 N.J. at 331, 478 A.2d 742. We have also addressed this argument earlier in this opinion in a different context and have rejected it for the reasons previously stated. Accordingly, we hold that the Handbook does not violate factor five of Metromedia.

III.
Defendants and the Department contend that the trial judge erred in ruling that the denial of speech therapy services to Gregory violated his rights under the New Jersey Constitution. For the reasons expressed herein, we find that there was a denial of equal protection only as the law was applied to Gregory, but not in general.
The judge's reasoning for finding a denial of equal protection was that "[o]nce the State determines that public funds shall be made available for educational purposes to all public school eligible children who attend nonpublic schools the State must meet strict scrutiny if they choose to exclude a class of public school eligible children from such participation." (emphasis added). In addition to mentioning "strict scrutiny," the judge stated that "[t]he location at which a child receives compulsory education has absolutely no rational relationship to the intent and purpose of the federal or state disability education public funding statutes." (emphasis added). She also found that "[n]o compelling state interest has even been alluded to by this State to exclude home schooled children from sharing funds." (emphasis added).
These phrases are from an analysis of equal protection under the United States Constitution. Although "equal protection" is not mentioned in the New Jersey Constitution, the New Jersey Supreme Court has recognized that our Constitution similarly protects against the unequal treatment of those who should be treated alike. N.J. Const. art. I, ¶ 1; Gardner v. New Jersey Pinelands Comm'n, 125 N.J. 193, 219, 593 A.2d 251 (1991). We have, however, not fully adopted the federal tests for denial of equal protection. The Court in Gardner explained:
Equal protection analysis under that provision [art. I, ¶ 1 of the New Jersey Constitution] rejects the multi-tiered analysis of federal equal protection doctrine and instead employs a balancing test. Brown v. City of Newark, 113 N.J. 565, 573, 552 A.2d 125 (1989). "In striking the balance, we have considered the nature of the affected right, the extent to which the government restriction intrudes upon it, and the public need for the restriction." Id. at 573-74, 552 A.2d 125, (quoting Greenberg v. Kimmelman, 99 N.J. 552, 567, 494 A.2d 294, (1985)).

[Id. at 219-20, 593 A.2d 251.]
This court has stated that this balancing test is "whether there is an appropriate governmental interest that is suitably furthered by the differential treatment." City of Jersey City v. Farmer, 329 N.J.Super. 27, 39, 746 A.2d 1018 (App.Div.), certif. denied, 165 N.J. 135, 754 A.2d 1211 (2000)(quoting In re Grant of Charter Sch. Application of Englewood, 320 N.J.Super. 174, 237, 727 A.2d 15 (App.Div.1999), aff'd as modified, 164 N.J. 316, 753 A.2d 687 (2000)).
In her discussion of equal protection, the trial judge cited N.J. Const. art. VIII, § 4, ¶ 1, for the proposition that equal access to education is fundamental in New Jersey. Abbott by Abbott v. Burke, 153 N.J. 480, 528, 710 A.2d 450 (1998). In Abbott, the Court stated:

*76 The New Jersey Constitution guarantees a thorough and efficient educational opportunity to all children in the State who attend public schools. The Education Clause states: "[t]he Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years." N.J. Const. art. VIII, § 4, ¶ 1.

[Id. at 531, 710 A.2d 450.]
This passage from Abbott and its reference to the New Jersey Constitution is not relevant to the analysis here as to whether Gregory was denied equal protection when defendants did not provide him with speech therapy. All that N.J. Const. art. VIII, § 4, ¶ 1 requires is that Gregory be given access to free public education. Gregory was given the opportunity to attend Fair Lawn public schools, and his parents made the choice for him not to attend.
Rather, the appropriate question here is whether the creation of separate categories for nonpublic school students and those educated at home is a violation of equal protection. Turning to the proper standard established in Brown v. City of Newark, courts consider the nature of the affected right, the extent to which the government restriction intrudes upon it, and the public need for the restriction. 113 N.J. 565, 573-74, 552 A.2d 125 (1989).
The first element, the affected right, is Gregory's right to special education and related services. In respect to this element, plaintiff contends that, to the same extent that nonpublic school students have the right to receive speech therapy services, he should have an equal right. He points to N.J.S.A. 18A:46-19.1 in which the Legislature has stated its purpose is to benefit "all school-age children." With respect to the second element, it is clear that defendants have effectively and completely denied him such services unless he forgoes the long-recognized right in this State to be home educated. That is, Gregory can only receive this service if he attends a public school, or, in the alternative, he can receive a pro rata share of money for this service if he attends a nonpublic school, but he receives no money or service if he is educated at home.
Defendants correctly point out that the federal regulations under 34 C.F.R. §§ 300.454 and -.455 provide that private school children have no "individual" right or entitlement to special education and related services. Here, however, plaintiff is not asserting any right to receive speech therapy at home on a one-to-one basis and, in essence, be treated preferentially over a student enrolled in a nonpublic school. Rather, plaintiff has agreed to follow the recommended treatment plan: speech therapy in a group not greater than three, twice per week in sessions of not more than one-half hour.
This brings us to the third element, the public need for the restriction. Here defendants base their argument on considerations regarding the proper allocation of limited amounts of money available for special education and related services. Defendants state that the public need for the restriction imposed on Gregory is evident in light of the finite amount of funds for special education. Limiting services to schools, that is to public and nonpublic schools, but not allowing money to flow to students educated at home, allows for use of the money in regulated environments that can be monitored, and for the broadest use of the money with the least amount of waste. The Department asserts that since funds for these services are limited, the State may address the economic and administrative realities associated with providing the services. It correctly relies *77 on Barone v. Dep't of Human Servs., Div. of Med. Asst. and Health Services, Bureau of Pharm. Assis. to the Aged and Disabled, where the court stated "[a]dministrative convenience is generally acceptable as a rational basis for classification, at least where the interest affected by the classification is neither fundamental nor suspect." 210 N.J.Super. 276, 293, 509 A.2d 786 (App.Div.1986), aff'd, 107 N.J. 355, 526 A.2d 1055 (1987). This statement applies here under the rational basis test, because monitoring special education and related services, and keeping down costs of transportation, are goals that are achieved by a narrow definition of "nonpublic school." This policy is rationally related to the achievement of a legitimate state interest. That rationale was used by the Hooks court in upholding the determination there to deprive a home educated child of speech therapy.[2] The court in Hooks, supra, addressed the public need for the restriction by stating:
Nevada and its school districts have a legitimate interest in promoting educational environments that fulfill those qualifications that the State deems important. Limiting IDEA services to qualified "private schools" reasonably advances that interest by steering scarce educational resources toward those qualified educational environments. Cf. Murphy v. Arkansas, 852 F.2d [1039,] 1044 [(8th Cir.1988) ] (holding that Arkansas's regulation of home education, but not private schools, was rationally related to State's interest in insuring that its citizens were being properly educated). Moreover and relatedly, school districts also have a legitimate interest in maximizing the utility of scarce funds. This interest is likewise reasonably advanced by limiting services to those environments that are regulated, monitored, and which might offer beneficial economies of scale.

[228 F.3d at 1043 (Footnote omitted) ].
Since the recommendation here was for Gregory to receive speech therapy in a group no larger than three, it follows that it would be more expensive to allow speech therapy at home (apparently in his own group of one), than in a school setting with two other children. Thus, we would agree with defendants, the Department, and the court's analysis in Hooks that the public need for the restriction as to where the services are delivered is suitably furthered by the differential treatment.
It appears to us, however, that the defendants' and the Department's arguments on this point are premised on the mistaken belief that Gregory sought to receive his speech therapy at home. He did not. The trial judge's order reimbursing plaintiff for the cost of speech therapy was entered only because plaintiff incurred the cost when defendants refused to provide it. Plaintiff's complaint in this matter averred that plaintiff "requested Fair Lawn Public Schools to provide the recommended speech therapy at the public school," and the request was denied. The trial judge held, and it has not been denied by the defendants, that Fair Lawn invited nonpublic school children to participate in the public school program for this particular service. Under these circumstances the rational basis for treating home schooled *78 children differently from nonpublic school children vanishes. If the services were provided for Gregory at the public school, as he requested, the local school district would receive exactly the same funding for Gregory as it did for other nonpublic school students who qualified for speech therapy services, and the services could be delivered at the same cost. Therefore, we hold that Gregory was denied equal protection under the law as applied in this case.

IV.
Finally, the defendants argue that the trial judge erred in holding them liable because they acted on the Department's directive and were bound by it. The trial judge denied defendant's motion to dismiss, reasoning that "[t]he Board of Education of Fair Lawn has elected on its own to go beyond what the State mandates according to what the Attorney General tells us and made a decision not to invite the home schooled child to participate." She observed, as we did earlier, that defendants have exactly the type of speech therapy program for public school students that was necessary for Gregory, and they invited private school children to participate in the public school program for this particular service, but excluded Gregory. Thus, she found separate culpability.
Plaintiff expected speech therapy from defendants and defendants were the ones who directly denied Gregory the requested therapy. After the Department intervened, defendants could have filed a crossclaim asserting that the Department was liable for failing to provide that service. They did not.
Responsibility for the cost of education of children receiving special education and related services falls on local school districts even though they receive federal and state funding. For example, the statutory scheme for payment of special education and related services for children who are placed in residential state facilities, or who have been placed by state agencies in group homes, private schools, or out-of-state facilities is found in N.J.S.A. 18A:7B-12(b), which provides the criteria for determining the "district of residence" of school-age children. The "district of residence" is responsible for the cost of education of such children, including those classified and placed pursuant to IDEA. Roxbury Tp. Bd. of Educ. v. West Milford Bd. of Educ., 283 N.J.Super. 505, 521, 662 A.2d 976 (App.Div.1995), certif. denied, 143 N.J. 325, 670 A.2d 1066 (1996) (court found that a school district where an autistic child is domiciled is responsible for his education within the context of the IDEA.)
Here, defendants make a similar claim that they should not be responsible for reimbursement because they did not include Gregory in the count of nonpublic students who required special education or related services, and thus Fair Lawn missed out on federal and state funds for Gregory. As in Roxbury Twp. Bd. of Educ., any unawareness of potential liability is not a defense to paying for the cost of the special education or related services. Further, defendants have not provided any statutory or case law support for their argument that they should not pay for the reimbursement.
To the extent that other arguments have been raised in opposition to the trial court judgment, we have considered them and found them to be of insufficient merit to warrant further discussion. R. 2:11-3(e)(1).
The judgment under review is affirmed as modified.
NOTES
[1] We note that, after the Hooks, supra, action commenced, the Nevada legislature amended its statute to require "each school district [to] provide programs of special education and related services for children who are exempt from compulsory attendance pursuant to the home-education exemption and receive instruction at home." 228 F.3d at 1038 (quoting Nev. Act Chap. 606, Sec. 45 (1999)(effective July 1, 1999)).
[2] The defendants and the Department correctly argue that under the federal constitutional analysis, the rational basis test used in Hooks would also apply here, rather than the strict scrutiny test as applied by the trial judge. See e.g., In re Div. of Criminal Justice State Investigators, 289 N.J.Super. 426, 437-38, 674 A.2d 199 (App.Div.), certif. denied, 146 N.J. 69, 679 A.2d 656 (1996); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35-40, 93 S.Ct. 1278, 1297-1300, 36 L.Ed.2d 16, 44-47 (1973); Null v. Bd. of Educ. of Cty. of Jackson, 815 F.Supp. 937, 939-40 (S.D.W.Va.1993).