**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3127-22

J. F. and C. F.,[1]

      Plaintiffs-Appellants,

v.

EGG HARBOR TOWNSHIP
SCHOOL DISTRICT—
BOARD OF EDUCATION,

      Defendant-Respondent.

_____

Argued September 23, 2024 – Decided October 8, 2024

Before Judges Sabatino, Gummer, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2663-21.

Keith Andrew Peterson argued the cause for appellants (Donelson, D'Alessandro & Peterson, LLC, attorneys; Keith Andrew Peterson, on the briefs).

---

[1] The trial court referred to the child by initials in its May 3, 2023 statement of reasons entered pursuant to Rule 1:6-2(f). We use the parents' and child's initials for the continued protection of the child's privacy interest. That compelling interest outweighs the Judiciary's commitment to transparency.

Jennifer B. Barr argued the cause for respondent (Cooper Levenson, PA, attorneys; Carl A. Taylor III, on the briefs).

Kevin F. Milton, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Kevin F. Milton, on the brief).

PER CURIAM

Plaintiffs J.F. and C.F., the parents of a school-age child with special needs, appeal the trial court's May 3, 2023 decision dismissing their claim that defendant, a public school district, is obligated to pay them fees for the father's time in tutoring the child at their home.

The parents contend the district must pay those fees, even though the father is not a certified schoolteacher, based on their interpretation of a written agreement that had been negotiated between them and the district concerning the child's educational needs. On summary judgment, the court rejected the parents' contractual interpretation, and, specifically, their argument that the father's at-home tutoring constituted an eligible "placement" the district must pay for. The parents appeal that determination.

On appeal, the district maintains the court properly construed the agreement by carrying out the parties' manifest intent to limit an eligible

2

"placement" to services provided only by a "school." Additionally, the district—joined by the Attorney General as amicus curiae—submits that our State's educational statutes and regulations do not allow a parent without a teaching certificate to be paid by a school district for time the parent spends in home schooling a child.

For the reasons that follow, we affirm.

I.

Plaintiffs, who live in Egg Harbor Township, have one child, who was a minor at the times relevant to this case. Plaintiffs' child, who has special needs, was a student enrolled at Egg Harbor Township School District until they filed what is known as a "petition for due process" on behalf of their child with the New Jersey Department of Education pursuant to 20 U.S.C. § 1415(b)(6) of the Individuals with Disabilities in Education Act ("IDEA") and N.J.A.C. 6A:14-2.7(a). In the petition plaintiffs alleged the district's educational programs and placements were inadequate and deprived their child of a free and appropriate public education.

In November 2018, the district's School Board and plaintiffs entered into a settlement agreement, which was signed by both parties and approved by an Administrative Law Judge ("ALJ") pursuant to N.J.A.C. 6A:14-6.5(c). In that

agreement, the Board agreed to reimburse plaintiffs up to $50,000 per year for their child's education, subject to certain conditions we will discuss below.

At the time the parties signed their agreement, plaintiffs' child was enrolled at Bridge Academy,[2] a unilateral placement chosen by plaintiffs while the due process claim was pending. According to plaintiffs, Bridge Academy was unable to meet their child's specific needs and so they did not re-enroll their child at the school. Plaintiffs allege they "searched for an alternate school in the area . . . but none were available." Consequently, the agreement was negotiated to provide for other options.

Relevant Contract Terms

Among other things, the agreement contains the following relevant provisions, referring to plaintiffs as "petitioners":

1. The Board will reimburse Petitioners an amount up to but not to exceed $50,000 towards [plaintiffs' child's] tuition at Bridge . . . .

2. The reimbursements described in Paragraph 1 shall be fully contingent upon the Petitioners timely providing the District's Business Administrator with fully executed copies of all Bridge enrollment or other contracts. In addition, Petitioners must provide proof that they incurred, and paid for, the

---

[2] Bridge Academy, sometimes referred to in the record as the "Bridge School," is a school in New Jersey designed for children with special educational needs.

4

education program and other expenses for which they seek[] reimbursement . . . .

3. Should [plaintiffs' child] become unable to attend Bridge for any reason, the Petitioners will have the option of unilaterally placing [their child] <u>at any other placement of their choosing</u>. Should Petitioners do this, it is understood and acknowledged that such placement, like the Bridge placement, <u>will be deemed a unilateral placement for all purposes</u>, and the Board's financial responsibility for such placement shall be . . . as though [plaintiffs' child] continued to attend Bridge.

. . . .

6. Petitioners agree[] to transport [their child] to Bridge <u>or other school</u> as discussed in Paragraph 3 of this Agreement. . . .

. . . .

8. Petitioners understand and agree that this Settlement Agreement and Release does not obligate the Board to undertake any expenditure other than the expenditures specifically and explicitly set forth above.

9. Petitioners agree to complete and submit any forms, including vouchers and payment orders, as necessary in order to receive reimbursement pursuant to this Agreement.

10. Petitioners acknowledge[] and agree[] that [their child's] placement at Bridge, <u>or any school at which they might place [their child] pursuant to Paragraph 3</u> of this Agreement, <u>is, and shall for all purposes be deemed, a unilateral placement.</u> The District neither

5

endorses nor recommends [plaintiffs' child's] placement at Bridge <u>or any other school</u> at which Petitioner[s] might place [their child] <u>pursuant to Paragraph 3</u> of this Agreement, nor does the District concede that such a placement is necessary to provide [plaintiffs' child] with [a free and appropriate public education]. The Parties acknowledge and agree that the Board has no control or supervision over Bridge's program <u>or the program of any other school at which Petitioner may place [their child] pursuant to Paragraph 3</u> of this Agreement . . . .

. . . .

25. It is expressly understood and agreed that this Settlement Agreement and Release shall be <u>subject to the laws of the State of New Jersey</u>.

[(Emphasis added).]

<u>Ensuing Events</u>

According to plaintiffs, "[u]nable to locate an appropriate school, [they] began designing a tutoring placement for [their child] at home" utilizing the services of New Jersey Advocacy, a non-profit agency that assists in hiring in-home tutors. Through these services, plaintiffs hired two private tutors. However, plaintiffs allege that "[d]ue to emotional incompatibility" with their child, the tutor for reading and math did not work out.

After searching for a replacement tutor, the father began tutoring his child in those subjects and plaintiffs sought reimbursement for his time and what they

6

claimed to be related charges. To document those charges, plaintiffs submitted to the Board (1) what they styled as a private tutoring "contract" between the two plaintiffs and the father and (2) "invoices" written from the father to plaintiffs showing "payments" in the form of bank transfers from both plaintiffs to the father as proof of them incurring expenses. In general, the father charged slightly more than $50 per hour for his tutoring services. It is undisputed the father is not a teacher certified as an instructor by the Department of Education pursuant to N.J.S.A. 18A:6-38.

In February 2020, the School Board, before it could process any requests for reimbursement, requested additional information regarding the "home educational program" it appeared plaintiffs had created for their child. The School Board specifically sought details about teacher certification, the subjects being taught, time sheets, and a detailed daily schedule.

Plaintiffs objected to these inquiries, responding to the School Board that nothing in the contract required them to provide this information to receive reimbursement. The School Board responded and referenced paragraph 9 of the agreement, noting plaintiffs had "agree[d] to complete and submit any forms . . . as necessary in order to receive reimbursement." Referencing paragraph 10 of the agreement, the School Board maintained that per the language of the

7

agreement, if plaintiffs' child could not attend Bridge Academy, "[the child] was to be placed at another school." The School Board offered, however, to allow plaintiffs "to have a 'home educational program' in an effort to resolve this matter without . . . litigation if they received the necessary information," including proof of instructor certification.

Plaintiffs responded that they did not concur with the School Board's interpretation of the agreement, asserting the phrase "any other placement" in paragraph 3 was not meant to be read as "any other school."

The Lawsuit

In August 2021, plaintiffs filed a complaint against the School Board in the Law Division, alleging breach of the parties' agreement. The School Board moved to dismiss the case, alternatively seeking to have the case transferred to the New Jersey Office of Special Education ("the OSE") within the Department of Education. The trial court denied that dismissal motion without prejudice, but granted the School Board's alternative relief of transferring the case to the OSE.

In February 2022, the OSE returned the request for enforcement back to the trial court, asserting the dispute did not involve the implementation of a student's programs or services and therefore was not within its administrative

jurisdiction.

At plaintiffs' request, the trial court reinstated the complaint. After the filing of additional claims and counterclaims, the School Board moved for summary judgment and to stay discovery in the meantime. Plaintiffs opposed the motions, arguing, among other things, that the issues of contract interpretation were not suitable for summary judgment, and that discovery concerning the parties' intent should be allowed to proceed. Alternatively, plaintiffs also cross-moved for summary judgment.

The Trial Court's Summary Judgment Decision

After hearing argument, the trial court issued orders on May 3, 2023, (1) granting the School Board summary judgment and dismissing plaintiffs' complaint with prejudice; (2) dismissing the School Board's counterclaims with prejudice; (3) denying plaintiffs' cross-motion for summary judgment; and (4) denying plaintiffs' motions regarding discovery as moot. The court issued a written opinion to accompany the orders.

In its opinion, the court first expressed its belief that "the OSE [wa]s better suited and has special expertise in deciding whether [the] educational costs were covered by the settlement agreement approved by the ALJ," because there was "disagreement as to the interpretation of the terms of the agreement . . . , not

9

simply a reimbursement issue." Nonetheless, the court "accepted jurisdiction" to decide the merits of the case.

As for the merits, the court found summary judgment was appropriate because there were "essentially no disputed issues of fact" besides "the interpretation of the settlement agreement which speaks for itself and is a finding of law for the court." The court additionally found "the terms in the settlement agreement must be reviewed in the context utilized in the applicable administrative code sections and statutes which govern education issues[,] including IDEA, N.J.S.A. [18A:46-1 to -55] and N.J.A.C. 6A:14-1 [to -10.2]."

The court recognized "it must consider the surrounding circumstances at the time the settlement agreement was entered into," which included the undisputed fact that "the settlement agreement permitted a unilateral placement of the child at Bridge School." Notably, the court observed "the agreement always attached the word 'school' when addressing any alternative placement other than the Bridge School."

The court particularly focused upon language found in paragraphs 2, 3, 6, and 10 of the agreement. It noted paragraph 2 "required plaintiff[s] to provide a copy of the Bridge School enrollment or other contracts," while paragraph 3 "addressed the 'placement' of the child into Bridge School." The court further

noted that paragraph 3 provided that "if the child was unable to attend Bridge School for any reason that the plaintiffs will have the option of unilaterally placing the child at any other placement of their choosing."

The agreement does not define the term "placement." However, the court emphasized language in paragraphs 6 and 10, which states that "[p]etitioners agree[] to transport [the child] to Bridge or other school" and "[p]etitioners acknowledge and agree[] that [the child's] placement at Bridge or any other school at which they might place [the child] pursuant to paragraph 3 of the agreement is, and shall for all purposes be deemed a unilateral placement."

The court further highlighted language in paragraph 10, stating that "[t]he [School Board] neither endorses or recommends [the child's] placement at Bridge or any other school at which petitioner[s] might place [the child] pursuant to paragraph 3 of this Agreement."

In its legal analysis, the court cited Forstrom v. Byrne, 341 N.J. Super. 45 (App. Div. 2001), in which we held that home education did not fit the definition of a "nonpublic school" and that "[educational] services for children who were home schooled [were not] covered under federal or state statutes." We reasoned that the parties' agreement and "its use of the term 'school' did not intend to

11

include home schooling as the alternative unilateral placement to the Bridge School."

The trial court determined "under a plain meaning and rational reading of the settlement agreement that the only costs which were permitted to be reimbursed [by the School District] were that of either Bridge School or the equivalent of a 'school' as interpreted and defined by" Forstrom. The court noted we had ruled in Forstrom that the term "'school' is [] used in its institutional sense as a 'place' where children receive education. It is akin to the second category or group delineated in the New Jersey compulsory education statute as those attending 'a day school in which there is given instruction equivalent to that [of] public schools.'" 341 N.J. Super. at 54 (quoting N.J.S.A. 18A:38-25).

Finally, the court found "the pertinent administrative code section concerning reimbursement again includes the word 'school' when addressing parental unilateral placements into unapproved schools." This language, the court found, "is supportive of [the School Board's] position . . . because such terminology concerns placement into unapproved 'schools' and specifically does not include home school or home schooling." The court thus concluded no ambiguity existed in the agreement and no further fact finding was needed.

On appeal, plaintiffs argue the trial court erred in its construction of the

agreement and in its application of the law. They assert the term" placement" within the agreement is not restricted to schooling provided by an educational institution and can be sensibly read to also include home tutoring by a parent. They also maintain there is nothing in the education statutes or regulations that prohibits a parent from being paid an hourly rate by a School Board for the time that parent devotes to home schooling a child.

## II.

This court reviews a trial court's grant of summary judgment de novo, applying the same legal standards that govern such motions in the trial court. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). This court considers the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide "whether the moving party was entitled to judgment as a matter of law." Rozenblit v. Lyles, 245 N.J. 105, 121 (2021) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); R. 4:46-2(c); see also Est. of Narleski v. Gomes, 244 N.J. 199, 205 (2020).

Further, because the construction of contract terms is a question of law, see Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001), we independently review the trial court's construction on a de novo basis.

13

Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998).

Applying such de novo review, we conclude the trial court soundly interpreted the parties' agreement and that its ruling comports with the applicable law.

A.

Under N.J.S.A. 18A:46-13, the Legislature outlined "the duty of each board of education to provide suitable facilities and programs of education for all the children who are classified as children with disabilities under [] chapter [46]." N.J.S.A. 18A:46-14 specifically provides

> [t]he facilities and programs of education . . . shall be provided by one or more of the following:
>
> a. A special class or classes in the district . . . .
>
> b. A special class in the public schools of another district in this State or any other state in the United States;
>
>  . . . .
>
> f. Instruction at school supplementary to the other programs in the school . . . .
>
> g. Sending children capable of benefiting from a day school instructional program to privately operated day classes . . .

14

whenever . . . it is impractical to provide services pursuant to subsection a., b., c., d., e., or f. otherwise;

h. Individual instruction at home or in school whenever . . . it is impracticable to provide a suitable special education program for a child pursuant to subsection a., b., c., d., e., f., or g. otherwise.

[(Emphasis added).]

New Jersey statutes also provide that parents are required to ensure their school-aged children attend a public school or receive equivalent instruction at a day school or "elsewhere than at school." N.J.S.A. 18A:38-25. Specifically, "[e]very parent . . . shall cause [that parent's] child regularly to attend the public schools of the district or a day school in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainments or to receive equivalent instruction elsewhere than at school." Ibid. (emphasis added).

Pursuant to regulations enacted by the Department of Education, free and appropriate public education and related services must be provided for students with disabilities from age three through twenty-one. N.J.A.C. 6A:14-1.1(d). A free and appropriate public education means special education and related services that: (a) have been provided at public expense, under public supervision

and direction, and without charge; (b) meet the standards of the State educational agency; (c) include an appropriate preschool, elementary, or secondary school education in the State involved; and (d) are provided in conformity with the individualized education program ("IEP") required under § 1414(d). 20 U.S.C.A. § 1401(9).

Pursuant to N.J.A.C. 6A:14-2.10, which was cited by the trial court in its decision, parents can also choose to unilaterally place their disabled child in a "school" they believe will provide the appropriate education and seek reimbursement from the school district. Specifically, the regulation states that:

> (a) Except as provided at N.J.A.C. 6A:14-6.1(a), the district board of education shall not be required to pay for the cost of education, including special education and related services, of a student with a disability if the district board of education made available a free, appropriate public education and the parents elected to enroll the student in a nonpublic school, an early childhood program, or an approved private school for students with disabilities.
>
> (b) If the parents of a student with a disability who previously received special education and related services from the district of residence enroll the student in a nonpublic school, an early childhood program, or approved private school for students with disabilities without the consent of, or referral by, the district board of education, an administrative law judge may require the district board of education to reimburse the parents for the cost of enrollment if the administrative law judge finds that the district board of education had not

16

made a free, appropriate public education available to the student in a timely manner prior to enrollment and that the private placement is appropriate.

> 1. A parental placement may be found to be appropriate by a court of competent jurisdiction or an administrative law judge pursuant to N.J.A.C. 6A:14–6.5 for placements in unapproved schools, even if the parental placement does not meet the standards that apply to the education provided by the district board of education.

[(Emphasis added).]

N.J.A.C. 6A:14-6.5, in turn, provides guidance as to whether unilateral placements by parents are appropriate. Specifically, that regulation directs that:

> (a) Pursuant to N.J.S.A. 18A:46-14, school-age students with disabilities may be placed in accredited nonpublic schools that are not specifically approved for the education of students with disabilities with the consent of the Commissioner of Education, by order of a court of competent jurisdiction, or by order of an administrative law judge as a result of a due process hearing. . . .

[(Emphasis added).]

A related regulation, N.J.A.C. 6A:14-4.3(b), recites a list of program options for school districts to consider for educating students with disabilities:

> (b) If it is determined that a student with a disability cannot remain in the general education setting with supplementary aids and services for all or a portion of the school day, a full continuum of alternative

17

placements as set forth in this subsection shall be available to meet the needs of the student. Alternative educational program options include placement in the following:

. . . .

9. Individual instruction at home or in other appropriate facilities, with the prior written notice to the Department of Education through the county office of education;

10. An accredited nonpublic school that is not specifically approved for the education of students with disabilities pursuant to N.J.A.C. 6A:14-6.5;

11. Instruction in other appropriate settings according to N.J.A.C. 6A:14-1.1(d);

. . . .

[Emphasis added.]

That said, "individual instruction at home" referred to in subsection (9) above is subject to another pertinent regulation, N.J.A.C. 6A:14-4.8, which delineates "program criteria [for] home instruction":

(a) A student with a disability shall have his or her IEP implemented through one-to-one instruction at home or in another appropriate setting when it can be documented that all other less restrictive program options have been considered and have been determined inappropriate.
. . . .

3. A written record of the student's <u>home instruction</u>, including dates and times during which home instruction is provided, shall be maintained, and <u>the teacher providing instruction shall be appropriately certified as teacher of students with disabilities or for the subject or level in which the instruction is given</u>.

4. Instruction shall be provided for at least 10 hours per week. The 10 hours of instruction per week shall be accomplished in at least three visits <u>by a certified teacher or teachers</u> on at least three separate days.

[(Emphasis added).]

In like manner, N.J.A.C. 6A:16-10.2 specifies rules regarding "<u>home or out of school instruction for a general education student</u> for reasons other than a temporary or chronic health condition." That regulation states, in relevant part:

(a) The district board of education shall provide instructional services to an enrolled general education student at the student's home or other suitable out-of-school setting under the following conditions:

1. The student is mandated by State law and rule for placement in an alternative education program, but placement is not immediately available;

. . . .

19

(c) The school district in which a student resides shall be responsible for the costs of providing instruction in the home or out-of-school setting either directly, or through online services, including any needed equipment, or through contract with another board of education, educational services commission, jointure commission, or approved clinic or agency.

(d) The services shall meet the following minimum standards:

> 1. The school district shall establish a written plan for delivery of instruction and maintain a record of instructional services and student progress.
>
> 2. The teacher providing instruction shall be a certified teacher.
>
> 3. The teacher shall provide one-on-one instruction for no fewer than 10 hours per week on three separate days of the week and no fewer than 10 hours per week of additional guided-learning experiences that may include the use of technology to provide audio and visual connections to the student's classroom.
>
> 4. The instruction shall meet the New Jersey Student Learning Standards and the district board of education's requirements for promotion and graduation.

(e) During all periods of instruction delivered in the student's home, the student's parent or other adult who has been designated by the parent shall be present.

[(Emphasis added).]

A-3127-22

<u>The Standards Applied</u>

Upon considering these and other related provisions within our educational statutes and regulations concerning disabled children, several points become salient:

- individual instruction "at home" of a disabled student is to be supplied by an "appropriate" school or program (N.J.A.C. N.J.A.C. 6A:14-4.3(b)).

- "the teacher providing instruction shall be appropriately certified as teacher of students with disabilities or for the subject or level in which the instruction is given." (N.J.A.C. 6A:14-4.8; <u>see also</u> N.J.A.C. 6A:16-10.2(d)(2)).

- during all such periods of instruction at the home by a certified teacher, a parent or other designated adult "shall be present" (N.J.A.C. 6A:16-10.2(e)).

- financially, "the school district . . . shall be responsible for the costs of providing instruction in the home or out-of-school setting either directly, or through online services, including any needed equipment, or through contract with another board of education, educational services commission, jointure commission, or approved clinic or agency." (N.J.A.C. 6A:16-10.2(c)).

It is readily apparent that plaintiffs' unilateral decision to provide home instruction to their disabled child through tutoring by the father—who is not a certified teacher—fails to comply with these requirements. Although the regulations, as noted above, contemplate that a parent or designated adult "shall be present" when a certified teacher is providing the instruction at the child's

A-3127-22

home, they do not state that the parent may serve <u>as</u> the teacher. Moreover, instruction by a certified teacher or an approved educational program is a precondition for the school district's obligation to pay the costs of such instruction or services under N.J.A.C. 6A:16-10.

Plaintiffs argue they are not bound by these requirements for "home instruction" because they are instead providing "home schooling" to their child. The distinction they posit is that "home schooling" is an alternative to the state statutory scheme and entails a relinquishment by the school district of its programmatic and instructional obligations when parents elect to teach children themselves in their own homes. N.J.S.A. 18A:38-25; <u>see also</u> <u>Forstrom</u>, 341 N.J. Super. at 65. But nothing in the statutes or regulations authorizes, let alone requires, the school district to pay parents an hourly wage for undertaking such home schooling. The School Board rightly stresses this point, which the Attorney General echoes.

B.

With this statutory and regulatory backdrop in mind, we turn to the terms of the parties' settlement agreement. We analyze the agreement by applying familiar principles of contract interpretation. Generally, in "interpreting a contract, a court must try to ascertain the intention of the parties as revealed by

22

the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009) (citations omitted). In divining that intention, the court must consider the language of the agreement as a whole. Boyle v. Huff, 257 N.J. 468, 478 (2024).

The meaning of contract terms is to be "decided by the court as a matter of law unless the meaning is both unclear and dependent on conflicting testimony." Bosshard, 345 N.J. Super. at 92 (citing Deerhurst Ests. v. Meadow Homes, Inc., 64 N.J. Super. 134, 152 (App. Div. 1960)). "'An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations.'" Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 282 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d Cir. 1993)).

Furthermore, all contracts are subject to compliance with the law. Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 73 (App. Div. 2022). Courts will not enforce an illegal contact provision. Roman v. Bergen Logistics LLC, 456 N.J. Super. 157, 170 (App. Div. 2018). Indeed, plaintiffs

23

and the School Board acknowledged in paragraph 25 of their agreement that the agreement "shall be subject to the laws of the State of New Jersey."

The trial court's decision adhered to these fundamental principles. It recognized that the parties' contractual dispute hinged upon the meaning of the term "placement" within paragraph 3 of the agreement. As we have noted, the term is not defined within the agreement. However, the trial court appropriately looked to other portions of the agreement—in particular, paragraph 10, which in three places refers to the placement occurring "at Bridge or any other school." This repeated use of the word "school"[3] within paragraph 10 signifies the parties intended the district's agreed-upon financial contribution to be confined to

---

[3] As stated in Merriam Webster's Dictionary, the primary definition of the term "school" is "an institution for the teaching of children." Merriam-Webster's Collegiate Dictionary 1111 (11th ed. 2020). Although we are cognizant, in the wake of remote instruction widely used in the aftermath of the COVID-19 pandemic, that the notion of a school is not confined to brick-and-mortar buildings and classrooms, the schools that provide such instruction are still "institutions."

reimbursing plaintiff for the costs of having their child enrolled in a school or a school program.

Neither paragraph 3 or 10 nor any other portion of the agreement refers to home schooling by a parent. The conspicuous absence of such a reference is consistent with the trial court's common-sense interpretation of the agreement.

The case law cited in the briefs does not compel a contrary result. In Forstrom we held that "education at home did not meet the definition of a 'nonpublic school'" eligible for special services funding. 341 N.J. Super. at 50. We recognize that Forstrom did not address the precise definitional question at issue here, i.e., the meaning of an eligible educational "placement" of a disabled child, but we discern nothing in Forstrom that supports plaintiffs' legal position. Nor do we read the federal district court's non-binding opinion in L.M. v. Evesham Township Board of Education, 254 F. Supp. 2d 290 (D.N.J. 2003) to invalidate the trial court's reasoning here, because L.M. involved the provision of instruction by a religious institution; plaintiffs here are individual parents, not an institution. See also N.J.A.C. 6A:14-6.5 ("School-age students with disabilities may be placed in accredited nonpublic schools that are not

25

specifically approved for the education of students with disabilities with the consent of the Commissioner of Education") (emphasis added).

There is no consequential ambiguity in the agreement bearing upon the dispute before us. There is no need to go outside of the four corners of the agreement and resort to parol evidence. The trial court sensibly read the words of the agreement as a whole and conclude the term "placement" was intended to encompass a "school" institution and not at-home tutoring by an uncertified parent. To the extent plaintiffs sincerely may have assumed otherwise, their unilateral mistake does not justify changing the plain meaning of the contract. Dugan Constr. Co. v. N.J. Tpk. Auth., 398 N.J. Super. 229, 242–43 (2008).

Even if, for the sake of discussion, the agreement is read to contemplate the School Board paying the parents for home tutoring their child themselves, there is no authority in the education statutes or regulations that authorizes such a financial commitment. To the contrary, the statutory and regulatory scheme we have detailed above conditions a school board's payment obligations upon teaching by a licensed professional. Although we presume plaintiffs want only what is best for their child, and the father may be striving as a layperson to do his best in good faith to serve in the role of a teacher, the taxpayers have no duty to pay for his time and efforts. Moreover, there is no arm's-length basis for the

over-$50 hourly rate that plaintiffs invoiced the Board. The fee "contract" they created with themselves is not enforceable.

In sum, the trial court soundly rejected plaintiffs' demand for payment for the father's time in tutoring their child at home. Such payment is neither mandated by the parties' written agreement, nor is it authorized by our educational statutes and regulations.[4]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We do not address here whether plaintiffs are entitled to any reimbursement for the billed costs of the certified tutors who have come to the residence, or the costs of equipment or instructional materials. To the extent there are open issues regarding such out-of-pocket expenses, they can be addressed in the trial court. We do not retain jurisdiction over any issues.